GRACE *v.* MARTIN.

83  245
d129  746

1. There was sufficient evidence to sustain the verdict.
2. The ground for new trial that the plaintiff, who was one of his own attorneys in the case, a short time before the trial embraced two of the traverse jurors then in service (their names not being mentioned), putting his arms around both their necks at the same time, is not sustained by evidence.
3. That the plaintiff furnished soda-water to two of the jurors who tried the case after they had been discharged for the term, because they complained of feeling sick, does not require a new trial.
(a) It was not error for the court to strike from this ground the words, "said treating not being casual, but part of a regular system of caressing and entertaining traverse jurors during the terms of the court which has been practiced by the said Martin for years," and to refuse to hear evidence to sustain the charge contained therein,

it being too general and referring to conduct, not at the term of this trial, but at terms for years past.

4. That the plaintiff furnished a witness summoned in his behalf with dinner, the witness being without money and unable to obtain it otherwise, is not cause for a new trial. This could only go to the credit of the witness before the jury.

5. Where long extracts from the charge of the court are excepted to, the plaintiff in error must specify what parts of them are erroneous or inapplicable. If this be not done, and some parts be applicable, a new trial will not be granted because of such charges.

6. In an action of complaint for land, a verdict for the plaintiff for the land in dispute is not too indefinite and uncertain, the land being fully described in the declaration by metes and bounds, numbers of feet, etc. The clerk, in issuing the writ of possession, can copy this description therein.

7. The discretion of the judge in refusing to entertain an affidavit handed to him in the street after the evidence on the motion for a new trial had been closed and the argument heard, was not abused.

July 8, 1889.

New trial. Evidence. Verdict. Attorneys. Witness. Charge of court. Practice. Before Judge KIBBEE. Pulaski superior court. May term, 1888.

J. H. Martin brought his action of complaint for land against M. T. Grace, for a tract of land in block F in the town of Hawkinsville, commencing at the northeast corner of the building known as the Dawson & Clark old office, and sold by W. H. Hendley to M. T. Grace, the father of the present M. T. Grace, said lot fronting on the south side of Commerce street, and from said point of commencement running south on the line of the east side of said building and parallel with Houston street 100 feet, then west as far as the land of M. T. Grace extends ; the lot being all the land sold by W. H. Hendley to M. T. Grace on November 27, 1869, etc., and that lies 100 feet south of the south line of Commerce street and on the west of a line drawn 100 feet south from northeast corner of the said Dawson & Clark building on a line with the east side of said building and parallel with Houston street. The abstract of title

attached to the declaration was, "deed to the premises sued for from M. T. Grace to J. H. Martin, dated June 10, 1887."

Various pleas were filed by the defendant, in addition to the plea of the general issue, which may be summed up as follows: Martin owned a lot fronting 25 feet and 10 inches on the south side of Commerce street and running back 70 feet, on which was a small wooden building occupied by him as a law office. Defendant and his brother, W. J. Grace, owned the lands on each side of said office lot immediately in the rear thereof, and also a piece of land 27 by 160 feet immediately in the rear of the office lot of Dr. A. A. Smith, the said office lot of Dr. Smith adjoining the lot of defendant. W. J. Grace owned the storehouse and lot on the corner of Commerce and Houston street, and the defendant, M. T. Grace, owned the storehouse and lot immediately west of and adjoining the office lot of said Martin. In order to throw the two lots of defendant and his brother together, defendant agreed with plaintiff to take the office lot of plaintiff in exchange for a lot west thereof, fronting 29 feet and 10 inches on Commerce street and running back south 100 feet, plaintiff thus getting the advantage of about 30 feet square in the trade. Plaintiff proposed to write the deed in order to save expense, to which defendant agreed, and the deeds were written by plaintiff. Defendant having lately become of age, and plaintiff having been of counsel for his mother and her estate and having boarded in the family of his mother, defendant had great confidence in his skill and integrity. Instead of writing the deed according to agreement, plaintiff wrote it in such a way as to include 27 by 50 feet in the rear of Dr. Smith's office, and so as to get eight inches fronting on Commerce street more than he was entitled to; the cutting off of this eight inches made it impossible for defendant to move his

storehouse, which was thirty feet and six inches front from the lot received from Martin, said removal being one of the main objects of the exchange, and so announced to Martin. In consequence of his employment as attorney for said estate and from his examination of its papers and affairs, Martin knew that said lot in rear of Smith's office had been assigned to defendant in the division of the estate; but as it was a vacant and unenclosed lot, defendant did not know it had been assigned to him, and Martin knew that defendant was ignorant of his rights in the matter. The deed from defendant to Martin included land in excess of the agreement in the value of $200 or other large sum. Defendant alleges that he did not know, when he signed the deed, that it contained more land than the contract agreed on called for because he did not examine it critically, and written artfully as it was, it would have been difficult to discover the fraud in the writing, but defendant signed it without close examination, and would not have signed it if he had known its real tenor and effect. The defendant prayed for a rescission of the whole of the contract between himself and Martin, and for general relief.

The evidence adduced upon the trial of the case was directly conflicting upon the main point in controversy, to wit, as to whether Martin abused confidence reposed in him by Grace, and thus obtained a conveyance from Grace for more land than had been agreed between them should be so conveyed. Of the evidence for the defendant it may be generally stated that it tended to sustain the allegations in his pleas. The evidence for the plaintiff tended to show that Martin had positively refused to take in exchange for his lot a lot of 29 feet and 10 inches front on Commerce street; that the deed as written was in accordance with the final agreement of the parties; that Grace did know of his rights to the

land in the rear of Smith's office; that a diagram was drawn and shown to him of the proposed conveyance by Martin, and the deed was drawn in accordance with this diagram, to which Grace consented; that the deeds were drawn by Martin to save expense; that after they were drawn and before they were signed, Grace carefully read both the deed from him to Martin and from Martin to him; that he asked why Martin did not say how far west the land should extend, and Martin told him he had drawn the deed exactly as the trade was made and did not wish any squabbles about lines, for he did not know where the lines were, etc., and the way the deeds were drawn the house on the land went with it; that Martin then prepared a written agreement giving to each one a right to move the houses off the lots by the first of July thereafter, and the deeds were then signed; that Martin made no representation to defendant of any kind to mislead or deceive him; that he did not know the exact width of defendant's house, but has since measured it and found it to be 30 feet and 4 inches; that Martin thought at the time of the trade that there was some land behind Dr. Smith's office, but did not and does not know how far south the line of Dr. Smith's lot extends; that Martin has never represented defendant in any litigation, or the defendant's father, but did represent to some extent the estate of defendant's mother; that it was a part of the trade that a party wall should be erected between the two lots exchanged, half the ground for which each party was to furnish, and if that wall were built there would not have been enough land left for the house of Grace if he had got the six inches now claimed by him; that Grace furnished Martin the deed from W. H. Hendley to the father of Grace to guide Martin in drawing the deed in question; and that the first positive information that Martin got as to the land in the rear of Smith's office

was from that deed, though he had thought before that Grace owned some land there, but did not feel under any obligation to communicate his thought to Grace. About the fact that the house which was on the lot traded by Grace to Martin could not be removed and placed on the lot traded by Martin to Grace under the deeds as drawn, on account of narrowness of the latter, there was no dispute; nor was there any dispute as to the fact of an agreement at the time of the making of the deeds that the parties should each have the right to move the houses from their respective lots, exchanged at that time. One Hugh Barron testified, for plaintiff, that he heard a conversation between his father and defendant in the presence of Martin and another, in which his father told defendant that the trade between him and plaintiff was, that they were to swap lots, and that plaintiff was to have from the northeast corner of said lots running back 100 feet, and Grace did not deny this; said that this was the trade, but he did not know he had so much land behind Smith's office at the time of the trade. This witness also testified that he did not remember whether, in the conversation mentioned, anything was said about the frontage of the lots, and he did not remember positively where his father said the measurement was to commence. On cross-examination, he said that he was positive his father said that the description was to commence at the northeast corner of the Clark & Dawson lot and run as stated in the deed. Martin had previously testified that Hugh Barron, Sr., who is now dead, and Grace and himself were all the persons present when the trade was really made, but that Barron was not present when the deed was drawn and signed.

The deed of Hendley to Grace above referred to was put in evidence, the land conveyed in it being described as fronting 30 feet more or less on the south side of

Commerce street and running back 210 feet, also con-
taining all the land on the lot adjoining it on the west
and now occupied by A. T. Burke as a law office, (the
Burke office, it appears from the testimony, was the
same office as that heretofore mentioned as the office of
Dr. Smith,) except the front part of said lot which was
deeded by Thos. Dawson and C. E. Clark to other par-
ties, the above described land being the house and lot for-
merly occupied by Thos. H. Dawson and Dr. C. E. Clark
as offices, etc.    The deed from Grace to Martin was also
in evidence, as was that from Martin to Grace.    The
description of the land in the former was the same as
the description in the declaration.

The jury returned the following verdict:

"We, the jury, find for plaintiff for the land in dispute and recom-
mend that the defendant have ninety days to move the house off the
premises, and also rent up to time of the removal of the house."

The defendant moved for a new trial on the grounds
stated in the opinion and the second head-note.    This
motion being overruled, he excepted.

W. L. GRICE, by brief, for plaintiff in error.

MARTIN & SMITH, contra.

SIMMONS, Justice.

Martin brought an action of complaint against Grace,
for a lot of land in the town of Hawkinsville.    The
jury returned a verdict for the plaintiff.    The defendant
moved for a new trial on various grounds, which motion
was overruled, and the defendant excepted.

1. There was no error in overruling the motion on
the first and second grounds.    There was sufficient evi-
dence to sustain the verdict.

2. There was no error in overruling the third ground,
because, even if it had been sufficient in law to set aside
the verdict, there was no evidence to sustain it.    There
was only one affidavit on this point, and that affidavit

fails to state that the two persons whom Martin is alleged to have embraced in the court-room were jurors. Martin, in his affidavit, denied the charge made against him in the third ground, and his positive denial of this should outweigh the mere belief of Grice that the persons were jurors.

3. The fourth ground, as approved by the court, alleges that Martin treated two of the jurors who tried the case, to soda-water, after they had been discharged for the term. The court did right to overrule this ground of the motion, especially under the explanation given of the act by Martin and the two jurors, which was that after they were discharged for the term, and being near a soda-fountain, the two jurors complained of feeling sick, whereupon Martin advised them to drink soda-water and acid phosphate, saying that he thought the acid would benefit them.

This ground contained originally the following words, to wit : "said treating not being casual, but part of a regular system of caressing and entertaining traverse jurors during the terms of the court which has been practiced by the said Martin for years." The court struck these words from the motion, and refused to hear evidence to sustain the charge contained therein. The plaintiff in error, in his bill of exceptions, assigned error upon these rulings. We do not think the court erred in striking these words from the original motion, and in refusing to hear evidence to sustain them. The charge contained therein was too general. They referred to the conduct of Martin during the terms of the court for years past, and proof of the charge, if made, would not have authorized the court to set aside the verdict in this case. If the charge had been that during the term at which this case was tried, and before the case was tried, it was the regular practice of Martin to treat and caress the particular panel of jurors from

which the jury in this case was selected, the judge would doubtless have entertained the motion, and if the fact had been proved to his satisfaction, would have set aside the verdict; and this court would have approved his action.   If counsel should so far forget the dignity and decency of his profession as to make it a habit or custom, when jurors are about to try cases in which he is engaged as counsel, or when they have returned a verdict in his favor, to treat the juror or jurors to spirits, soda-water or anything else, the trial court should not only set aside the verdicts rendered in such cases, but should punish the counsel who is guilty of such conduct.   If such indecent and reprehensible practices were allowed by the courts, an upright lawyer, who would scorn to act in this manner, could not compete with one given to such practices.   We do not know, and are unwilling to believe, that any lawyer in this State is guilty of such misconduct, but if such be true, the trial court, when such misconduct is brought to its attention by proper allegations in a motion for a new trial, should take cognizance of it, and if proved, the verdict rendered under such influence should be set aside.   We do not intend to intimate by these remarks that there is any-thing in this record showing that Mr. Martin is guilty of such misconduct.   We know him too well to believe or suspect that he is.   Our remarks are intended to re-fer more especially to future cases, if unfortunately they should arise.

4. The 5th ground complains that Martin furnished one of his witnesses a dinner before he was sworn.   We see no error in the overruling of this ground.   It ap-pears from the record that Martin had this witness sum-moned in his behalf, and the witness being without money and unable to obtain his dinner otherwise, Mar-tin gave him his dinner.   The most that can be said about this is, that it is a fact which could go to the credit of the witness before the jury.

5. The 6th and 7th grounds contain long extracts from the charge of the court, and the error assigned thereon is, that the charges complained of were inapplicable to the case. We have read these extracts, and think that at least some of the principles announced therein were applicable. It is the duty of counsel for the plaintiff in error, under the practice in this court, where he sets out in his motion such long extracts and excepts to the same, to specify what part of the same is erroneous or inapplicable. Counsel not having done this, and some parts of the extracts being applicable to the case, we hold that the court did not err in refusing a new trial on these grounds.

6. The 8th ground complains that the verdict is too indefinite and uncertain. The verdict seems to be in the usual form of verdicts in ejectment. It is for the land in dispute. The land in dispute was fully described in the declaration by metes and bounds, number of feet, etc. When the writ of possession is issued by the clerk, it will be an easy matter for him to read the declaration in the case and copy into his writ the description set out therein, so as to make the writ of possession certain and definite.

7. The 9th ground complains that the court refused to entertain an affidavit handed to him in the street after the evidence on the motion for a new trial had been closed and the argument heard. This was a matter within the discretion of the court. The testimony in the case must be closed at some time, and we will not control the discretion of the trial court in receiving it or rejecting it after the trial is closed, unless that discretion has been abused. It was not abused in this case. *Judgment affirmed.*