## 36. CUESTA *v.* GOLDSMITH.

1. A landlord does not waive his right of action against his tenant merely by allowing a subtenant or assignee of the original tenant to remain in possession of the premises, even though he accept payment of the rents from the subtenant or assignee, with knowledge of such subletting or assignment. The original tenant may be released from liability by an agreement with the landlord for the substitution, or by the landlord's electing to proceed against the subtenant as his own tenant.

2. A ground of a motion for a new trial, based on the newly obtained, though not newly discovered, testimony of a witness, who had been adjudged insane prior to the bringing of the suit, and who was in the State Sanitarium at the time of the trial, but who subsequently has been found capable of giving testimony, is so similar to the ground of newly discovered testimony as to be governed by substantially the same rules.

3. A person who has been adjudged insane is not, in all cases, incompetent as a witness. His testimony is admissible if he has sufficient understanding to apprehend the obligations of an oath and to be capable of giving a correct account of the matters he has seen or heard in reference to the questions at issue; and whether he has that understanding is a question to be determined in each case, the weight to be given to his testimony being finally a question for the jury.

4. In this case the trial judge did not abuse his discretion in his action upon the motion, which was similar in nature to that indicated in the second headnote.

Complaint, from city court of Atlanta—Judge Reid.    May 31, 1906.

Argued January 15,—Decided January 22,—Rehearing denied January 29, 1907.

*John L. Hopkins & Sons,* for plaintiff in error.

*Westmoreland Brothers, Goodwin & Hallman,* contra.

POWELL, J.    The owner of a building fronting on Whitehall street in Atlanta had leased it to the defendant for a period ending December 31, 1901, at a rental of $180 per month, and the defendant was in possession, conducting a cigar store, when the plaintiff purchased the building and by agreement became substituted as landlord. On February 10, 1903, the plaintiff instituted suit to recover the rents for the months from June to November, 1901, inclusive. Defendant pleaded, in substance, that on July 6, 1900, after the plaintiff had become his landlord, he sold the cigar business then being conducted by him, to A. G. Ballard, and before doing so he had communicated to the plaintiff his desire to make the sale and abandon the premises, and that plaintiff assented to this and agreed to accept Ballard as the tenant in lieu

of defendant; that Ballard then took exclusive possession and charge of the store, and defendant never paid any further rent after the agreement that Ballard should be substituted as the tenant; and that Ballard paid the rent monthly, as it fell due, up to June, 1901, directly to the plaintiff, who accepted it and gave receipts therefor to Ballard. In the testimony there was a direct conflict as to whether the plaintiff had agreed to accept Ballard as his tenant in substitution for the defendant. The plaintiff even denied that he knew the defendant had sold to Ballard, and, while admitting that he had received the rent from Ballard, explained that he thought that Ballard was paying it for defendant and under an arrangement between him and defendant. Evidence was introduced tending to show that the plaintiff did know of the sale from defendant to Ballard. A verdict having been rendered in favor of the plaintiff, the defendant filed a motion for a new trial. One of the grounds of the motion was based on the fact that a short while prior to the institution of the suit Ballard was adjudged insane and sent to the State Sanitarium, where he was confined at the date of the trial, and that subsequently to the trial it was ascertained that he had sufficiently recovered from his insanity to give evidence in movant's favor. Affidavits from Ballard were attached, showing that his recollection coincided with that of the defendant's witnesses, both in that the landlord knew of the sale from defendant to Ballard, and also in that the landlord had expressly agreed to accept him as tenant in substitution for the defendant. There were also attached affidavits showing Ballard's mental condition and good character. Movant and his counsel also filed their affidavits that prior to the trial and up to the time it was had, they had made frequent inquiry as to Ballard, and each time learned that he was still in the State Sanitarium, and that therefrom they believed him mentally incompetent to testify in the case until recently, when they received information to the contrary.

1. There are many exceptions in the record, and the evidence is voluminous, but in the light of what we are holding it is unnecessary to elaborate it. With the exception of the ground relating to the obtaining of the testimony of Ballard, the other assignments of error proceed upon the theory that, if the plaintiff ever knew or had constructive notice that the defendant had sold out his busi-

4

ness to Ballard and had sublet the premises to him, and afterwards received the rent from Ballard, this would.create a case of substitution of tenants, even in the absence of an agreement on the plaintiff's part to release the defendant or to accept Ballard as the tenant. The decision in the case of *Hudson* v. *Stewart,* 110 *Ga.* 37, is sufficient answer to these contentions. That case, in effect, holds that if the tenant sublets the premises without the consent of the landlord, the original tenant is liable for the rent although the landlord may know of the subletting. The reasons are given by the court as follows: "But it is said that the tenant could not legally sublet the premises, and that when he did so and the landlord knew of the occupation by the subtenant, this was sufficient to create this relation. Not at all. In the case of *McConnell* v. *East Point Land Co.,* 100 *Ga.* 134, this court ruled that it was at the election of the owner to make such subtenant his tenant, and when the owner so elects he must proceed against such subtenant as his own tenant; and in *McBurney* v. *McIntyre,* 38 *Ga.* 261, it was ruled that a subtenant becomes the tenant of the landlord. if he elects to recognize him as such, and not the tenant of the tenant who placed him upon the premises without the consent of the landlord. So that, in order for the relation of landlord and tenant to exist between the owner of the property and a subtenant, some affirmative action must be had by the landlord showing that he elected to treat the subtenant as his tenant. It is not sufficient that the landlord has knowledge and makes no objection. As an instance, it may readily be seen that the owner of a storehouse may be unwilling to rent the house to A., on account, say, of his insolvency, but is entirely willing to rent it to B., who is a friend or relative of A., and does so. Without having obtained the consent of the landlord, B. sublets it to A. and puts him in possession for B.'s term. The landlord, with a knowledge of the fact that A. is occupying his store, makes no objection, but does not elect to treat him as a tenant, preferring to hold B. It can not be said that the owner of the premises occupies the relation of landlord to A. because he knew of the occupancy of the latter of his house. Otherwise the landlord would be forced to give up his claim for rent against B.; as it seems to be settled that when the landlord elects to make the subtenant his tenant and accepts him as such, he releases his claim on the original tenant. 12 Am. & Eng. Enc.

L. 715, citing 2 Bush (Ky.), 282; Taylor's Landlord and Tenant, §524. So that a knowledge that his tenant had subleased the property, and a failure to interpose any objection, can not be held to be the acceptance by the landlord of the subtenant as his immediate tenant. 'The mere fact that an owner of property out of possession does not object to the possession of another is not sufficient to constitute a tenancy.'" 18 Am. & Eng. Enc. L. 293, is an authority for the statement: "Where the lease contains an express agreement or covenant by the lessee to pay rent, he remains liable for rent to accrue, though he assigns the lease. And this liability of the lessee is not affected by the fact that the landlord accepts payment of the rent from the assignee, nor by the fact that the landlord assents to the assignment; nor will the bringing of an action of covenant by the landlord against the assignee, at the request of the lessee, to recover for the rent, release the lessee from liability." See also, in this connection, *Fletcher* v. *Fletcher*, 123 *Ga.* 470, and *Boyd* v. *Kinzy*, 127 *Ga.* 358.

2. The ground of the motion for a new trial based on the newly obtained, though not newly discovered, testimony of a witness who had been adjudged insane prior to the bringing of the suit, and who was in the State Sanitarium at the time of the trial, but who subsequently, though still confined, has been found capable of giving testimony, is so similar to the ground of newly discovered testimony as to be governed by substantially the same rules. It has, perhaps, somewhat greater similarity to the ground of surprise, which formerly frequently appeared in motions for new trials. 3 Bouv. Inst. 512; 3 Graham & Waterman on New Trials, 874 et seq. In this and in all similar cases the cardinal requirements as to the new testimony are substantially the same; the party must have used due diligence to procure it on the former trial, it must be shown to be material to the issue, it must go to the merits of the cause, it must not be merely cumulative and impeaching, and must be of such a character as to probably change the result. Such grounds are addressed to the sound discretion of the trial judge, and his decision thereon will not be controlled, except in cases of manifest abuse of discretion. The fact that the testimony of a witness who was incompetent to testify at the time of the trial, on account of insanity or other cause, has become available to the losing party, may in many cases afford a sound legal reason

for the exercise of the discretion of the trial court in granting a new trial. Manifestly it would be in accordance with the principles of justice to grant a new trial in such a case where it appeared that the testimony was not unproduced at the former trial through any lack of diligence on the part of the movant, and that the evidence is of such a character that if it had been offered on the former trial the result probably would have been different. In this case we would not have disapproved his exercise of discretion if the trial judge had granted the motion, but as he was in a very much better position to judge intelligently as ,to whether the interests of justice required the granting or denial of the motion than we are, we shall not interfere, for we are satisfied that the facts and circumstances were not such as to demand a new trial.

3. In the first place, upon the question of the diligence of the moving party, it nowhere appears that Ballard was not just as competent to testify at the date of the trial as he was at the time of the hearing of the motion for a new trial. In one of the affidavits attached to the motion [affidavit of J. M. Gilmer and Dr. Whitaker, assistant physician at the State Sanitarium], the witnesses say: "Each of deponents has personally known said Ballard ever since he has been in the State Asylum,—a period of about four years. Each of deponents has constantly come in contact with said Ballard during that period, and has had abundant opportunity to observe his condition from day to day. Said Ballard has never been what is known as an insane person. He has never been in the least violent or obstreperous. He has always been fully aware of his surroundings. He has eaten and slept regularly." An insane person is not absolutely incompetent as a witness. Section 5273 of the Civil Code, which provides, "Persons who have not the use of reason, as idiots, lunatics during lunacy, and children who do not understand the nature of an oath, are incompetent witnesses," is but declaratory of the common law, and is to be construed accordingly. An opinion by Judge Lurton, in the case of Pittsburg & W. Ry. Co. *v.* Thompson (C. C. A.), 82 Fed. 726, is so much in point that we feel justified in quoting from it at length: "We come now to the question of Wakelee's competency as a witness. When he was offered as a witness, counsel stated that he was a person of unsound mind, and at the time an inmate of an insane asylum, having been committed under an inquisition of lunacy.

When objection was made to his competency, the court heard evidence, including that of the medical men in charge of the asylum of which he was an inmate, as to the character and extent of his mental unsoundness, and also caused him to be elaborately examined upon the questions at issue in the suit, that it might be determined to what extent he was unsound and how far his mind and memory was out of balance. After a full consideration of all this evidence, the court ruled that he might be heard, and that the jury should determine, under proper instructions, how far his mental state affected his memory and credibility. This is now assigned as error. The practice followed by the court in this matter was that approved by the Supreme Court in the District of Columbia v. Armes, 107 U. S. 519, 2 Sup. Ct. 840. The general statement that at the common law a person non compos mentis is incompetent to testify is doubtless true. Hartford v. Palmer, 16 Johns. 143; Cannady v. Lynch, 27 Minn. 435, 8 N. W. 164. In the case of Reg. v. Hill, 5 Cox. Cr. Cas. 259, the proper meaning of this general statement of the rule was under consideration, and the Chief Justice said: 'Various authorities have been referred to which lay down the law that a person non compos mentis is not an admissible witness. But in what sense is the expression non compos mentis employed? If a person be so to such an extent as not to understand the nature of an oath, he is not admissible. But a person subject to a considerable amount of insane delusion may yet be under the sanction of an oath, and capable of giving very material evidence upon the subject-matter under consideration. The proper test must always be, does the lunatic understand what he is saying, and does he understand the obligation of an oath? The lunatic may be examined himself, that his state of mind may be discovered, and witnesses may be adduced to show in what state of sanity or insanity he actually is. Still, if he can stand the test proposed, the jury must determine all the rest.' In the case of District of Columbia v. Armes, cited above, the Supreme Court, referring to Reg. v. Hill, said: "The doctrine of this decision has never been overruled that we are aware of,' and added: 'The general rule, therefore, is that a lunatic or a person affected with insanity is admissible as a witness if he have sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct account of 'the matters he has seen or heard in

reference to the questions at issue; and whether he have that understanding is a question to be determined by the court, upon the examination of the party himself and any competent witnesses who can speak as to the nature and extent of his insanity.' But it is said that the Ohio statute makes a person of unsound mind absolutely incompetent. § 5240, Ohio Rev. St., is in these words: 'All persons are competent witnesses except those of unsound mind, and children under ten years of age who appear incapable of receiving just impression of the facts and transactions respecting which they are examined, or of relating them truly.' But the question remains, who is a person of unsound mind? That the person has been found insane, and is an inmate of the insane asylum, affords prima facie evidence that he is of unsound mind, within the meaning of the provision, and operates to throw the burden of proving competency upon the parties offering him. This was the ruling of Judge Ricks, who tried this case, and, in our judgment, was a correct exposition of the law. Whether he was so unsound in mind and memory as to be totally incapable of testifying is an open question, under this statute, as at the common law. The statute is but a declaration of the common law. To suppose that it was meant to disqualify every person who is of any degree of unsoundness would bring about an intolerable condition of things, and, under such circumstances, it is not to be presumed that the common law was intended to be altered or modified to any greater extent than indicated by a reasonable construction of the words of the statute. To say that a person of unsound mind is incapable of testifying is but to state the general rule of the common law. But at the common law the unsoundness must be such as that he is incapable of understanding the nature of an oath or giving a coherent statement touching the matter upon which he is examined. In Cannady *v.* Lynch, 27 Minn. 435, 8 N. W. 164, a similar statute was held not to extend the exclusiveness of the common law." The following cases are directly in accord with the above statement of the law: Wright *v.* Southern Ex. Co., 80 Fed. 85; State *v.* Brown, 2 Marv. (Del.) 380; District of Columbia *v.* Armes, 107 U. S. 519. Upon an examination of the case of *Mayor of Gainesville* v. *Caldwell,* 81 *Ga.* 76, it will be seen that the interrogatories of an adjudged lunatic were held to be admissible in evidence, the Supreme Court ruling that the evidence pro and con as to his mental state

at the time of the taking of the interrogatories was for consideration by the jury. See also *Thornton* v. *McLendon,* 41 *Ga.* 263, and *Formby* v. *Wood,* 19 *Ga.* 581.

4. The trial judge, in passing on the motion, was warranted in concluding that the movant and his counsel, by proper inquiry, might have ascertained, prior to the trial of the case, that Ballard was in mental condition to testify, and therefore that they might have taken his deposition or have procured his testimony otherwise. It is conceded in the able argument of counsel for the plaintiff in error, that so much of Ballard's testimony as would show an actual agreement on the plaintiff's part to substitute him (Ballard) as tenant in lieu of the defendant is cumulative, but it is insisted that certain new facts that would be testified to by this witness would tend to show knowledge on the plaintiff's part that the defendant had sold out his cigar business to Ballard. In the light of what we have already ruled, this is not a material fact. Therefore we are not prepared to say that the court below erred in overruling the motion for a new trial.          *Judgment affirmed.*

### ON MOTION FOR REHEARING.

PoweLL, J. We have carefully examined the motion for rehearing and the brief of counsel submitted therewith. This is a court for the correction of errors committed in certain trial courts, but, since courts of review are not infallible, it will always be our pleasure to correct our own errors as cheerfully as we would those committed by our brethren of the trial bench. In this case, however, we are satisfied that the decision announced is correct, and that able counsel has merely misconceived the scope and meaning of what was announced. He conceives the opinion to mean that a substitution of tenants in the case of subletting can only arise by express agreement. We do not think that, when it is taken as a whole, the opinion is subject to this construction; but to remove all doubt, let it be clearly understood that we recognize that a contract of substitution may be created, as any other similar contract, by a mutual course of conduct indicating consent, as well as by express words. What course of conduct or what acts are sufficient to cause such contract to be implied is generally for the jury. In the case at bar the jury found the facts insufficient to imply the landlord's assent, and since this court can not undertake the solution of prob-

lems of fact, we deemed it sufficient merely to mention that such a conflict of evidence did exist and that it had been determined in favor of the landlord. It is true that by refusing to reverse the trial court on account of the rejection of evidence tending to show constructive. notice of the sale from the tenant to the subtenant, we in effect held that only actual knowledge on the part of the landlord was relevant as tending to show his assent. We still think this is correct.

It is insisted that the court overlooked the fact that the trial judge charged the jury that a substitution would be implied between the parties, as a matter of law, upon proof of substantially the same facts which we have held would not necessarily effectuate that result. It is further insisted that since the defendant made no exception to this charge, it is therefore to be considered as the law of the case. The law of estoppel by res judicata does not extend so far. This doctrine only applies in cases of judgments, or rulings in the nature of a judgment, either interlocutory or final. We have examined the motion carefully, both as to the matters herein referred to and as to all other matters complained of, and we do not find it well taken.          *Judgment affirmed.*