## 14926. MENDEL v. BARRETT & SON.

BELL, J.   1.   While a landlord does not waive his right of action against his tenant merely by allowing a subtenant or assignee of the original tenant to remain in possession of the premises, even though he accept payment of the rents from the subtenant or assignee with knowledge of such subletting or assignment, the original tenant may be released from liability by an agreement with the landlord for the substitution, or by the landlord's electing to proceed against the subtenant as his own tenant. See *Cuesta* v. *Goldsmith*, 1 *Ga. App.* 48 (57 S. E. 983); *Hudson* v. *Stewart*, 110 *Ga.* 37 (35 S. E. 178). "One tenant may replace another by virtue of an express contract of substitution; or such a contract may be. created, as may any other similar contract, by a mutual course of conduct that indicates an agreement to effect such substitution, as well as by spoken or written words." *Golden* v. *Adler*, 16 *Ga. App.* 342 (2) (85 S. E. 349); 16 R. C. L. 847, § 347.

2. The evidence was sufficient to authorize the inference of an express contract whereby the plaintiff landlord agreed to a substitution of the first assignee of the written lease as his tenant in lieu of the original lessor; but, whether such agreement when standing alone would be binding and enforceable in view of the fact that the original lease was for a period of more than one year, and therefore necessarily in writing, and the agreement to substitute was in parol, the evidence nevertheless warranted the conclusion that the plaintiff expressly agreed to accept the second assignee of the written lease as his immediate tenant, and that this agreement was so far executed as to be taken out of. the statute of frauds. If, as the evidence offered in behalf of the defendant tended to show, the second assignee paid a sum of money to the first assignee for a transfer of the lease, with the understanding with the plaintiff that he would adopt the second assignee as his immediate tenant, and if such second assignee thereupon exercised a control over the premises to the extent of allowing the same to be used by another, to whom he made a third assignment of the lease and from whom the plaintiff thereafter accepted the rents, the agreement between the landlord and the second assignee would operate as a substitution of the second assignee as the immediate tenant in lieu of any prior tenant. Although the agreement was in parol, it was removed, by execution, from the operation of the statute of frauds; and this is so irrespective of whether such second assignee became a tenant at will or for the period of the written lease. Civil Code (1910), §§ 3693, 3223; *Lynch* v. *Poole*, 138 *Ga.* 303 (75 S. E. 158); *Sikes* v. *Carter*, 30 *Ga. App.* 539 (2) (118 S. E. 430); *Ambrose* v. *Ambrose*, 94 *Ga.* 655 (19 S. E. 980); Bliss *v.* Gardner, 2 Ill. App. 422 (2). The jury were, therefore, authorized to find that the original lessor was discharged from liability to pay the rents.

3. "Where long extracts from the charge of the court are excepted to, the plaintiff in error must specify what parts of them are erroneous or inapplicable. If this be not done, and some parts be applicable, a new trial will not be granted because of such charges." *Grace* v. *Martin*, 83 *Ga.* 245 (5) (9 S. E. 841); *Seaboard Air-Line Ry.* v. *Barrow*, 18 *Ga. App.* 261 (3 a) (89 S. E. 383); *Seaboard Air-Line Ry.* v. *Lyon*, 18 *Ga.*

*App.* 266 (5) (89 S. E. 384). Under this rule a new trial should not be ordered upon the first ground of the amendment to the motion for a new trial, even though some parts of the charge therein excepted to may have been erroneous, other parts being applicable and correct.

5. The plaintiff relied for a recovery upon the obligations of the defendants as contained in the original lease contract, and the court did not err as against him in stating the contentions of the parties as in the excerpt complained of in the second ground of the amendment to the motion for a new trial.

6. The evidence authorized the verdict found for the defendants, and for no reason assigned did the court err in overruling the plaintiff's motion for a new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*

DECIDED AUGUST 13, 1924.

Distraint; from Walton superior court—Judge Fortson. June 16, 1923.

M. Mendel sued out a distress warrant against C. L. Barrett & Son for what he alleged to be a balance due for the rent, at $65 per month, of a store leased to the defendants in writing on November 25, 1919, for the period of two years from January 1, 1920. The contract contained no provision for assignment or subletting. The defendants filed a counter-affidavit, in which they alleged that they had been released from liability under the contract by the elections of the plaintiff to treat successive assignees of the lease as his immediate tenants.

The defendants, without entering possession, assigned their lease to B. R. Barrett. The plaintiff was consulted before this assignment was made; and, with reference to a conversation had with a member of the defendant firm, he testified: "He asked me if I objected to B. R. Barrett having the store. I says, 'No.' I told him B. R. Barrett was as good for his rent as he was. . . I meant by that I had as soon risk B. R. Barrett as C. L. Barrett & Son,—no difference to me. I had my contract. That is what I meant for him to understand." Besides other testimony with reference to this transaction introduced by the defendant, the evidence of B. R. Barrett was substantially to the effect that he talked with the plaintiff, and that the plaintiff expressed his satisfaction at having the witness for a tenant. But B. R. Barrett, also without entering under the lease, assigned it to Hearn Hardware Company, and, with reference to this transaction and the plaintiff's. connection with it, he testified: "I went to Mr. Hearn and told him if he was acceptable and it was agreeable with Mr. Mendel,

I would lease him that house; and I think the difference was $210 for the term of the lease. I told Mr. Hearn if Mendel would agree to take him in my stead that I would transfer this lease to him. I went to Mr. Mendel and he told me he would. I told Hearn to talk to Mendel, and he told me he did, and under those terms I transferred that contract, and I think Mr. Hearn paid me $210. Business was very flush and houses were in great demand. Mr. Hearn was to take my place and pay the rents." The testimony of Mr. Hearn upon the same subject was as follows: "After I had talked with Mr. Barrett I saw Mendel. Mr. Mendel mentioned it to me about taking over this lease. He says, 'I heard you wanted to get a place for your hardware company.' He says, 'I would be glad to have you down there in this end of town; it would help business to get a hardware store down here.' . . He says, 'I heard you got Mr. Barrett's place.' I says, 'No, I have not got it yet. . . I can't afford to move a hardware store for two years. . . I have got to have a lease for five years,' . . and Mendel told me if I would get B. R. Barrett's lease that he would give me a lease for five years, and then I went over and told Mr. Barrett I would take that lease, and we traded, and I paid Mr. Barrett $210 with the understanding I would get a lease from Mendel for five years. I paid the $210 and got this transfer. . . He [Mendel] had promised to lease it to me for five years before I bought out Mr. Barrett. I traded with Mr. B. R. Barrett with that understanding. I told him I did not want it if I could not get it for over two years, and he said a lease any longer than two years, and I can't give you any lease over that time, but says I would be glad for you to take it. That was after I had expended my money."

The plaintiff testified: "Mr. Hearn told me he got a contract from B. R. Barrett, and I told him I was glad to have him, and he asked me for three years longer term. . . He offered me $75 a month for the next three years after this contract was out, and everything was so booming I thought if he offered me $75 I could get $100." The plaintiff further said, in effect, that he represented to Mr. Hearn that he did not have the right to lease the store for the three additional years, "for an excuse."

The several transfers were made during the first part of 1920. J. F. Whatley was occupying the premises as a tenant of Mendel

at the time of the execution of the original lease to C. L. Barrett & Son, and was not required by any of the parties to vacate, although Mendel testified that he gave Whatley a notice to vacate, in order to obtain possession for C. L. Barrett & Son. Hearn Hardware Company, without consulting the plaintiff, assigned the lease to Whatley, who continued to occupy the premises thereunder and for some time paid the rents. The plaintiff testified: "I collected rents out of Whatley after he went in possession; he paid me and I receipted him; he paid me $65 per month. I receipted the rent, not as tenant. I collected that several months. . . As long as he paid it I was not trying to collect from those people."

The verdict was in favor of the defendant. The plaintiff's motion for a new trial was overruled, and he excepted.

In the first special ground of the motion for a new trial error is assigned upon the following charge of the court: "Mr. Bailiff, bring the jury in. Gentlemen, in charging you just now I misstated the law and I did not read the law full enough to you, the law in reference to the statute of frauds; and I will ask you to disregard what I have stated heretofore on that subject, and I will now give it to you correctly in charge. It is in reference to the making a substitution of the contract. The law says, to make the following obligations binding on the promisor, the promise must be in writing, signed by the party to be charged therewith, or some person by him lawfully authorized; that is, any contract that is not to be performed within one year from the making thereof. The law further says the foregoing section does not extend to the following cases: when the contract has been fully executed; where there has been performance on one side, accepted by the other in accordance with the contract; where there has been such part performance of the contract as would render it a fraud of the party refusing to comply, if the contract did not compel a performance.

"I charge you if you believe from the evidence in this case that a contract was made in writing by C. L. Barrett & Son and Mendel, and that later that Mendel and C. L. Barrett & Son agreed that C. L. Barrett & Son would be released from that contract, that agreement to release the contract need not be in writing.

"I charge you further that if you believe that subsequent to the making of the contract with C. L. Barrett & Son and Mendel, that C. L. Barrett & Son undertook and agreed with B. R. Barrett

to transfer their interest in the lease to B. R. Barrett and that Mr. Mendel was brought into the conference, or the contract, and that all these parties agreed among themselves that a new contract would be entered into, which would be a substitution of the old contract, and that was a complete and entire contract, then I charge you that contract would have to be in writing to the extent it would have to be signed by the party charged with the performance of it. Mendel would not have had to sign that contract, but it would have had to have been signed by the party obligated in that case, which would have been B. R. Barrett.

"I repeat that if you believe from the evidence in this case that C. L. Barrett & Son informed Mendel that they had transferred their lease to another and Mendel assented to that, why that would release C. L. Barrett & Son, regardless of whether a new contract, if any, with Mendel made with B. R. Barrett was in writing or not; if C. L. Barrett was released by Mendel and that release was not a part of a three-cornered contract, so to speak, why that need not have been in writing. Mendel could have released him by a verbal agreement.

"Further, I charge you that if you believe in this case that there was a three-cornered agreement, so to speak, and that Mendel and B. R. Barrett and C. L. Barrett all agreed that there would be a substitution, and that contract was partly performed, that would take it out of the statute of frauds, if there had been such part performance as would make it a fraud not to enforce it, and then it need not have been in writing, under the section of the law I have read to you. I inadvertently misstated the law to you, and called you back to correct it, and you will disregard the law as I first gave it to you and apply the law as I gave it to you this second time."

The exception to this charge was that it was "hurtful to the defendant [plaintiff?] in that it was calculated to confuse the jury; that said charge is not applicable under the law and the facts of this case; that any agreement between C. L. Barrett & Son, B. R. Barrett and Mendel as claimed was void for want of a consideration and a nudum pactum in so far as Mendel is concerned; that, the contract being in duplicate, or the lease between the parties being executed in duplicate, Mendel would be bound by no transfer of the lease held by Barrett & Son unless entered upon the

duplicate held by Mendel and agreed to by him, and that therefore the charge above quoted is erroneous and hurtful to the movant."

In the second special ground of the motion for a new trial error is assigned upon the following excerpt from the court's charge: "These are the contentions of the parties in this case,—the plaintiff relying upon his rental contract; the defendant relying upon the facts as stated in the counter-affidavit, the substance of which I have just repeated to you." The movant contends that the plaintiff's "rights to recover were thus confined to the rental contract alone, when he claimed other grounds of recovery and denied the contentions of the defendant, and this charge was calculated to confuse the jury and to confine the plaintiff entirely to the evidence of his contract, and to exclude his other testimony in the case."

*Orrin Roberts,* for plaintiff.

*R. L. & H. C. Cox,* for defendants.