## 34515. ROTRUCK et al. v. GRANDMA'S BISCUITS, INC. et al.

HALL, Justice.

The issue in this appeal is whether Grandma's Biscuits, Inc. did or did not assign to Wholesome Foods, Inc. its rights under a certain lease. We find that as a matter of law no such assignment was made, and accordingly the grant of summary judgment for Grandma's Biscuits, setting aside a purported sale of the land, was not erroneous.

The land in dispute, the "Mistletoe Road Property," belonged to Mrs. Berry who entered into a ground lease agreement with Grandma's, giving Grandma's a ten-year term expiring in 1980, two successive renewal periods of five years each, and a right of first refusal if the land were to be sold. Grandma's was authorized to construct on the property at its sole expense a typical "Grandma's Biscuits Restaurant and Take Home Food Store." The lease provided that this building would remain the property of Grandma's. Grandma's did erect the contemplated building.

In 1974, Wholesome Foods, Inc. was formed by defendants-appellees, Rotruck, Paula Jones and Harvey Jones (hereinafter "defendants"), for the specific purpose of being a franchisee of Grandma's. On February 1, 1974, a franchise agreement was executed between Grandma's and Wholesome authorizing Wholesome to operate various Grandma's Biscuits restaurants including the one on Mistletoe Road.

Prior to and for some time after that franchise agreement, Grandma's continued to remit to Mrs. Berry's real estate agent the rental amount of $316.66 per month called for by the lease. Meanwhile, Wholesome was required to pay $316.66 per month to Grandma's resulting from Wholesome's status as franchisee and occupier of the premises. After some months, according to

the affidavit of Grandma's president, Wholesome's tardiness in paying rent to Grandma's precipitated a new arrangement under which Wholesome paid the $316.66 directly to Mrs. Berry's agent. This situation continued for about three years.

Grandma's lease from Mrs. Berry contained the following sections: "This contract shall create the relationship of Landlord and Tenant between the parties hereto; no estate shall pass out of Lessor. Lessee has only a usufruct, not subject to levy and sale, and not assignable by Lessee except by Lessor's consent. Lessee may sublease portions of the leased premises to others provided such sub-lessee's operation is a part of the general operation of Lessee and under the supervision and control of Lessee and provided such operation is within the purposes for which said premises shall be used. Except as provided in preceding sentences, Lessee shall not, without the prior written consent of Lessor endorsed hereon, assign this lease or any interest hereunder, or sublet premises or any part thereof, or permit the use of premises by any party other than Lessee."

Mrs. Berry at no time gave her written consent to any assignment of the lease, nor was she asked to do so. Her affidavit and that of her real estate agent show that when Wholesome began to make the rental payments called for by the lease, Mrs. Berry and her agent neither knew nor cared what the arrangement was between Wholesome and Grandma's so long as the rent continued to be paid.

Grandma's and Wholesome have no written agreement except the franchise agreement. Wholesome has never at any time had a written lease with anyone on the Mistletoe property.

On or about October 25, 1977, the three defendants, Rotruck, Paula Jones and Harvey Jones, entered into a purported purchase of the property from Mrs. Berry. She gave a warranty deed, subject to Grandma's ground lease. At no time was Grandma's given an opportunity to purchase the land in accordance with its right of first refusal. The record shows that defendant Rotruck knew, and defendants Jones knew or had every reason to know of the first refusal provision in Grandma's lease prior to purchasing the property.

Grandma's brought suit to set aside the sale, naming as defendants Rotruck, Paula Jones, Harvey Jones, Mrs. Berry and her realty company. The Rotruck and Jones defendants argued that the lease "was assigned by operation of law to Wholesome Foods, Inc." and that is the only question before us.

There is nothing in the record indicating that Grandma's ever intended such an assignment. Mrs. Berry consented to no assignment. Had the lease been assigned to Wholesome, there is nothing showing it was later assigned to these three individual defendants. Wholesome's paying the rent directly to Mrs. Berry is the only ground of defendants' claim of assignment; but that fact is consistent with Wholesome's being a subtenant or agent of Grandma's and raises no presumption of assignment. This conclusion is consistent with *Garbutt & Donovan v. Barksdale-Pruitt Junk Co.*, 37 Ga. App. 210 (139 SE 357) (1927), cited by both sides here. Mrs. Berry's mere acceptance of payments from Wholesome in accord with the terms of her original lease to Grandma's did not constitute a substitution of Wholesome for Grandma's under the lease. *Southland Investment Corp. v. McIntosh,* 137 Ga. App. 216, 220 (223 SE2d 257) (1976); *Garbutt & Donovan v. Pruitt Junk Co.,* supra; *Cuseta v. Goldsmith,* 1 Ga. App. 48 (57 SE 983) (1907).

We cannot find any indication that an assignment occurred here. "As to the usufruct, since the original tenant has no estate in land, one cannot talk about a sublease in the technical common law sense . . . The confusion as to the use of the terms assignment and sublease would appear to arise in the case of a usufruct where the transfer is not authorized. In a case where the landlord does not consent to the transfer, but also does not elect to oust the wrongful possessor, it is easy to classify this as a subtenancy. But in reality in this case the possessor of the premises is simply holding in place of the original lessee and from the landlord's standpoint, he is merely an agent or representative of the lessee." 19 EGL 191, Landlord & Tenant, § 32 (1971).

Finally, were a court to rule that Grandma's has assigned its rights in the lease to Wholesome, conceivably though not necessarily that could have the effect of

granting to these three defendants as a windfall the $50,000-$60,000 building Grandma's had constructed on the land. This fact argues that "assignment by operation of law," whatever that may be, is quite inappropriate here: the fate of an expensive building would normally be carefully drafted in a written assignment, and defendants' argument requires us to assume that Grandma's intended to give it away. Nothing in the record indicates that any consideration was paid for the alleged assignment.

The mere fact that Mrs. Berry and her agent were confused about the legal arrangement between Grandma's and Wholesome and failed to seek clarification in no way "estops" Grandma's to deny the assignment. See generally *Hughes v. Cobb,* 195 Ga. 213 231-234 (23 SE2d 701) (1942). We note that Mrs. Berry has filed a cross claim against these defendants alleging that they knowingly failed to inform her of the true facts. Moreover, Grandma's had no obligation to offer to return the parties to the status quo prior to seeking relief. Grandma's received nothing under the contract which it seeks to set aside. See *Dimmick v. Pullen,* 224 Ga. 452 (162 SE2d 427) (1968). Enumerations of error 2 and 3 are without merit.

On this record, there is no genuine issue of material fact yet to be decided, and the trial court correctly granted summary judgment against these three defendants to Grandma's, setting aside the sale and returning the parties to their prior position.

*Judgment affirmed. All the Justices concur.*

ARGUED FEBRUARY 19, 1979 — DECIDED APRIL 17, 1979.

*Ronald J. Armstrong, Leonard C. Lewellen,* for appellants.

*David W. Porter, H. G. Snipes,* for appellees.