A90A1296. SPRAYBERRY CROSSING PARTNERSHIP v. TULEY.
(400 SE2d 334)

SOGNIER, Judge.

Sprayberry Crossing Partnership brought suit against Richard Tuley seeking to recover rent and other amounts due under a lease agreement. Tuley brought a third party action against O'Hara's, Inc., the party to whom Tuley had transferred all his interest in the lease premises. After trial on the main claim the jury returned a verdict in favor of Tuley, and Sprayberry Crossing Partnership appeals.

1. Appellant contends the trial court erred by denying its motion for a directed verdict made at the close of the evidence. Appellant first argues that the trial court should have construed the lease in

issue to find as a matter of law that no new lease had to be executed in order to effect a renewal of the lease for the optional 5 year period under special stipulation F. Special stipulation F granted appellee, the authorized assignee of the original tenant, three options "to renew" the lease for an additional period of five years each with the terms and conditions remaining the same for each of the option periods. The basis for computing future rent increases was set forth in special stipulation B, the amended version of which provided that "the Base Rental for the third year, and each successive year, of this lease, *and all extensions and renewals thereof*, shall be increased" (emphasis supplied) based upon the formula in the special stipulation.

"The construction placed upon the lease, as evidenced by the conduct of the parties, is to be considered. [Cit.]" *Chalkley v. Ward*, 119 Ga. App. 227, 231 (166 SE2d 748) (1969). The lease in issue here was executed in 1978 for a five year term ending November 30, 1983. The lease required the tenant to give the lessor six months notice in writing of the tenant's intention to exercise the option to renew the lease. After the original lessor assigned its interest to First Capital Income Properties, Ltd. ("First Capital"), the original tenant obtained First Capital's written permission to assign its interest to appellee, effective June 16, 1983. It is thus apparent that at the time appellee became the substitute tenant under the lease, the time for exercising the renewal option had already passed. It is uncontroverted that the original lessee did not exercise the option. On July 1, 1983, First Capital received a typewritten letter from appellee, dated June 29, 1983, stating that "[t]his letter is to confirm our interest to exercise the option to continue the lease assigned to us by Tim Sullivan for the next five years." Under appellee's signature was handwritten "O'Tooley's Irish Pub," the name of the restaurant and pub appellee was operating on the leased premises. Appellee received no specific response from First Capital regarding his letter, but he received numerous other letters from it regarding, inter alia, his rental obligations, copies of the assignment agreement and original lease, and default notices. Appellee continued in the premises, and in December 1983 was notified that "[i]n accordance with your Lease your base rent is to be increased by 5%." While the rental increase stated in the letter was consistent with special stipulation B as to future rent upon execution of an extension of the lease, it was inconsistent with paragraph 25 of the lease, which provided that if the tenant remained in possession of premises after expiration of the term with the lessor's acquiescence and without any express agreement of parties, the tenant would be deemed "a tenant at will at rental rate in effect at end of lease." It is uncontroverted that appellee paid the increased rent amount and that even after appellee assigned the lease (see Division

2, infra), his assignee paid the subsequent five percent increases in the base rent consistent with special stipulation B.

The conduct of the parties in the case at bar is indistinguishable from the parties in *Chalkley*, supra, and shows that a departure from the renewal provisions of the lease resulted in the lease being renewed without strict adherence. *Watson v. Waffle House*, 253 Ga. 671 (1) (324 SE2d 175) (1985). See also *Ask Enterprises v. Johnson Model Bedding*, 155 Ga. App. 294 (270 SE2d 709) (1980). No question of fact existed that appellee did not become a tenant at will but instead remained a tenant under the written lease, see *Hicks v. Gentry*, 104 Ga. App. 3, 5 (1) (120 SE2d 915) (1961); and therefore appellant was entitled to a directed verdict on this issue. See generally *Anderson v. Dunwoody North Driving Club*, 176 Ga. App. 210, 211 (335 SE2d 451) (1985).

Under *Chalkley*, supra at 231, appellee's conduct in paying the increased rent amount pursuant to special stipulation B, rather than asserting his right to continue paying the old rent as would be his right under paragraph 25 as a tenant at will, and the lessor's acceptance of the payments establishes that the parties intended to extend the lease and that the lessor waived the notice provision. Thus, it is unnecessary to address appellant's argument that appellee's letter of June 1983 in which appellee "confirm[ed] our interest to exercise the option to continue the lease assigned to us . . . for the next five years" constituted written notification of appellee's intent to exercise the option in special stipulation F.

Finally, we agree with appellant that there is no question of fact that its conduct, as set forth above, demonstrated that it waived the timeliness of appellee's notice to exercise the option. See id. Accordingly, it was entitled to a directed verdict on that issue as well. *Anderson*, supra.

2. We also agree with appellant that it was entitled to a directed verdict on the basis that it did not waive appellee's liability under the lease. The lease specified that it was a usufruct and in paragraph 16 provided that "Tenant shall not, without the prior written consent of Landlord endorsed hereon, assign this lease or any interest hereunder, or sublet premises or any part thereof, or permit the use of premises by any party other than Tenant. Consent to any assignment or sublease shall not destroy this provision, and all later assignments or subleases shall be made likewise only on the prior written consent of Landlord. Assignee of Tenant, at option of Landlord, shall become directly liable to Landlord for all obligations of Tenant hereunder, *but no sublease or assignment by Tenant shall relieve Tenant of any liability hereunder*." (Emphasis supplied.)

The evidence adduced at trial showed that in May 1984 appellee assigned "all of his leasehold interest in the property" to O'Hara's,

Inc. After appellee notified First Capital by telephone of the assignment of his interest in the premises to O'Hara's, appellee received a letter from First Capital, dated May 25, 1984, in which First Capital reminded appellee of the assignment provisions in the lease, informed appellee that an assignment and assumption of lease would be "immediately required," and requested appellee to provide First Capital with certain information about O'Hara's. No such information was sent, and appellee continued to receive default notices on rent due and was notified in December 1984 of the next five percent increase in rent. It appears that the increased amount of rent was paid to First Capital by O'Hara's. Beginning in August 1985, First Capital ceased communicating with appellee, instead dealing directly with O'Hara's. Included in the letters from First Capital to O'Hara's were bills for repairs for which First Capital informed O'Hara's that it, as tenant, was responsible under paragraph 10 of the lease. In December 1985 First Capital assigned its interest as landlord in the leased premises to appellant. Notice of the assignment was sent to O'Hara's but not to appellee. The notice informed O'Hara's that First Capital "has assigned its interest as landlord under your lease to [appellant]. Commencing with your rental obligations due January 1, 1986 and thereafter you are required to make all payments of rent, and all other payments which you are to make to landlord under the lease, payable to [appellant]. From and after the date hereof, all notices, demands, requests or other instruments required in the lease to be given by tenant to landlord shall be sent to the landlord." Appellant's files on the monthly charges for the premises in question from November 1983 to May 1984 name O'Hara's as the tenant. Default notices for January, June, and July 1986 rents, as well as certain other repair bills, were sent to O'Hara's by appellant. O'Hara's abandoned the premises sometime in August-September 1986. By letter dated October 24, 1986, appellant demanded past due rent from O'Hara's and referenced appellant's knowledge that O'Hara's had partially sold its business to a Christopher Picon, who had defaulted in payment of the rent to appellant. In that letter appellant agreed to waive late charges "due to the unforeseen difficulties in the sale of your [O'Hara's] business" upon timely payment of the overdue rent. When no payment was made for October or November, appellant wrote appellee at the end of November 1986 demanding rents due on the property.

We agree with appellant that this case is controlled by *Southland &c. Corp. v. McIntosh*, 137 Ga. App. 216 (223 SE2d 257) (1976) (physical precedent), see also *Rotruck v. Grandma's Biscuits*, 243 Ga. 512, 514 (255 SE2d 36) (1979), and that appellant was entitled to a directed verdict on the assignment issue since under the lease provision in paragraph 16 appellee was not relieved from his contractual obligation to make the rental payments upon assignment of the lease

to O'Hara's. *Step Ahead v. Lehndorff Greenbriar, Ltd.*, 171 Ga. App. 805, 806-807 (321 SE2d 115) (1984), cited by appellee, is distinguishable in that the lease therein contained no express provision whereby the landlord retained its rights against the old tenant. Accordingly, the trial court erred by denying appellant's motion for directed verdict. See generally *Anderson*, supra.

3. Having held that the trial court erred by denying appellant's motion for directed verdict, it is not necessary to address appellant's remaining enumerations regarding alleged errors in the charge to the jury.

*Judgment reversed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED NOVEMBER 14, 1990 —
REHEARING DENIED DECEMBER 10, 1990 — 

*Harman, Owen, Saunders & Sweeney, Perry A. Phillips*, for appellant.

*Awtrey & Parker, Dana L. Jackel, Germano & Kimmey, Don E. Germano*, for appellee.