Willingham, guar. *vs.* Bentley and another.

---

No. 150.—ISAAC WILLINGHAM, guardian, plaintiff in error, *vs.* BENJAMIN F. BENTLEY and another, executors of E. Garrett, deceased.

[1.] G, by his will, directed his lands and all his perishable property, including one slave by name, to be sold, giving three-fourths of his estate, including twenty-one negroes, to three grand-children : to one of whom he gave $500 extra of an equal share, " and more if need required," to defray the expense of his raising and giving him a good English education.   The testator left it to the discretion of his executors, whom he nominated " to carry his will into full effect," whether or not the negroes should be hired out or land purchased and they be kept thereon, so as to be treated with humanity, and raised so as to benefit the heirs : *Held,* that the title to the property bequeathed to the grand-children, did not so vest in them at the death of the testator as to entitle their guardian to sue for and recover it, but that the executors were clothed with a personal trust, for the purpose of carrying into effect the objects and intentions of the testator, both as it respects the property and his grand-son, to whom the extra allowance was given.

In Equity, in Lincoln Superior Court.   Decision by Judge JAMES THOMAS, April Term, 1856.

Willingham, guar. *vs.* Bentley and another.

Eli Garrett, by his will, gave one-fourth of his estate to. his wife.

" *Item* 4. I will that the sum of $500 or more, (if need re-- quired,) be set apart out of my estate for the express purpose of raising and educating my grandson, George C. Willingham, so far as to give him a good English education, over and above his equal share, of my other two grandchildren, viz: Nancy J. Willingham and William N. Willingham."

The remaining three-fourths of his estate " be equally divided between my grandchildren, viz : Nancy C. Willingham, William N. and George C. which last named child was given by his father (Isaac Willingham) to myself and wife during our natural life, or until he becomes of age."

"*Item* 8. I will that it shall be left at the discretion of my executors whether or not the negroes shall be hired out, or land purchased, and they be kept thereon so as to be treated with humanity, and raised so as to benefit the heirs of my estate."

*Item* 9 appointed executors to the will "to carry the same into full effect."

The guardian of these grandchildren filed a bill for the recovery of this estate. On demurrer the Court sustained the demurrer, and this decision is assigned as error.

REESE ; TOOMBS ; L. STEPHENS, for plaintiff in error.

T. W. THOMAS, for defendants in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The only question in this case is this : Did the title to the three-fourths of the estate left by the testator to his grandchildren vest in them at his death, so as to entitle their guardian, during their minority, to recover it from the executors ?

After careful examination, and with but little legal light from the books to guide us, we have come to the conclusion

that the will confers upon the executors a power coupled with a trust; and that consequently, they have the right to withhold the property for the purpose of carrying out the objects and purposes of the testator.

The executors are directed to sell all the land and one slave. It is then left to *their* discretion whether or not the negroes shall be hired out or other lands be bought and they kept thereon, so as to be treated with humanity, and raised so as to benefit the heirs of his estate—meaning, doubtless, his grandchildren. Whether the twenty-one slaves bequeathed to the grandchildren, in the absence of any provision respecting them in the will, should be hired out and kept together, and worked on land to be purchased for that purpose, would be a matter to be decided by the Ordinary and the guardian. But Mr. Garrett saw fit to withdraw this power from their control and vest it in his friends, Mr. Spiers and Mr. Bentley. Had he not the right to do so? And should he not be allowed *his will* in this respect, contravening, as it does, no rule of the law?

But, it is argued, the election once made by the executors, there is no reason why they should not withdraw or abdicate in favor of the guardian. But we apprehend the discretion given to the executors was continuing until the trust should terminate by the marriage or coming of age of one of the *cestui que trusts.* If the executors decided to hire the slaves, they were clothed with authority to place them with such persons and in such parcels as humanity might dictate; and thereby, as the testator very properly believed, best subserve the interest of his grandchildren. Or they might try, first, the experiment of hiring; and if that failed to work well, resort to the other alternative allowed by the will.

Should one of the executors die, this being a personal trust which could be performed only by both, it would be determined. The same result would follow should the executors, or either, fail or refuse to act. It is not such a trust as that a Court of Equity would lay hold of and execute it.

As to the extra allowance of $500, " or more (if need required,") set apart out of the estate for the express purpose of defraying the expense of raising and educating George Crawford Willingham, one of the three grandchildren, so far as to give him a good English education, over and above his equal share with the other two, we think this trust also was confided to the executors; and that they, and not the guardian appointed by the Court, are responsible for its proper execution.