ATKINSON *v.* ORR *et al.*

1. Where one enters into possession, and at his own expense erects buildings on the city lots of another, under a parol contract that he is so to do and is to pay a certain annual ground-rent each and every year, and that he is to retain possession as long as he so pays, but on failure to pay, the owner is to take possession of the premises, including the buildings, as his property absolutely, and where this is done in contemplation of reducing the contract to writing, which is not accomplished in the lifetime of the owner, but after his death, his executor, with the assent and approbation of all persons interested, does, in connection with the other party, reduce it to writing, under seal, the latter stipulating in writing to pay the agreed rent for each and every year, or in default, after ninety days' notice, to surrender the premises and the buildings thereon, or be considered as a tenant holding over, and the former stipulating that the latter, his heirs and assigns, shall retain possession as tenant so long as the rents are paid, etc., the contract does not create a tenancy from year to year, but is *prima facie* a perpetual lease on condition of prompt payment of the ground-rent annually, the written contract being, by its own terms, only an embodiment of the previous parol contract.

2. Though an injunction be not absolutely necessary to prevent a threatened wrong, yet where the bill has been pending for several terms, with no demurrer thereto filed by the defendants, a motion to dismiss ought to be denied, the relief by injunction sought, or some of it, being such as the court has power to grant on the facts, equitable and legal, alleged in the bill.

May 20, 1889.

Contracts. Ambiguities. Landlord and tenant. Leases. Executors. Injunction. Demurrer. Practice. Before Judge JENKINS. Morgan superior court. September term, 1888.

Reported in the decision.

BILLUPS & MUSTIN and CALVIN GEORGE, for plaintiffs in error.

A. M. SPEER and FOSTER & BUTLER, *contra*.

BLECKLEY, Chief Justice.

By parol, both parties intending afterwards to reduce the contract to writing, Atkinson leased from Foster two vacant city lots upon condition that the lessee might erect houses thereon, paying the lessor for ground-rent $300 annually, on or ,before the first day of July in each and every year, the lessee to retain possession so long as he so paid, and upon his failure to pay, the lessor was to take absolute possession of the premises, including the buildings thereon, as his property. The contract was made and took effect in the year 1869; the lessee went into possession, erected buildings at a cost of $8,000, about $4,000 on each lot, paid his rents promptly up to 1880, in which year the lessor died testate, and his son qualified as his executor. The executor and the lessee at once reduced the contract to writing, both of them executing the writing under seal, and all the persons interested in the lessor's estate assenting, also in writing, to the executor's act. By the terms of the contract so verified under seal, which terms were recited to be the same as those embraced in the parol contract, the lessee obligated and bound himself to pay to the executor (or to whomsoever might be the legal holder of the written instrument under a division and distribution of the lessor's estate), on or before the first day of July in each and every year, the sum of $300, and on his failure so to do after ninety days' notice, to surrender to the legal holder of the instrument, the possession of "said lots, houses and premises," otherwise to be considered as a tenant holding over. And on his part the executor agreed that so long as the lessee, his heirs or assigns, should pay said rent and comply with his contract, he, his heirs or assigns, should remain in the quiet and legal possession of the premises, as tenant. In 1885, A. W. Foster, another son of the testator, having become the legal holder of

the written instrument, granted to one Orr permission to enter upon part of the premises and erect a building thereon, in a way not only to encroach upon the lot in question but to obstruct an alley used in connection with the premises. Atkinson thereupon filed his bill praying that Orr be restrained by injunction from erecting the building, and from otherwise interfering with complainant's rights; and praying also that A. W. Foster be enjoined from renting or leasing "said land" or undertaking to do the same, or otherwise interfering with complainant's rights in the premises, etc. An interlocutory injunction was sought, but was denied at March term, 1886. At September term, 1887, the defendants filed a written motion to dismiss the bill, which at September term, 1888, was granted. The grounds of the motion were that the bill was without equity, and that it showed no title in the complainant to the property so as to entitle him to an injunction.

1. The first question is as to the construction of the contract. We think the *prima facie* interpretation is that the parties intended a perpetual lease, defeasible by failure to pay the ground-rent as stipulated. This may be the conclusive interpretation. Foltz *v.* Huntley, 7 Wend. 210; Taylor Land. & Tenant, §74. But we can safely hold that it is the apparent meaning of the parties as set out in the written contract, and if there be a competing interpretation fairly grounded in ambiguity, patent or latent, the case is open to extrinsic evidence. See "Ambiguity" as dealt with by the code. Two special features of the parol contract as recited in the writing are to be noted: there was no specification or limit as to the character or value of the buildings to be erected by the lessee, and all buildings, however extensive or valuable, were to become the absolute property of the lessor in the event of non-payment of rent for a single year. These features of the contract, in our opinion,

conclusively negative any intention to create nothing but a tenancy from year to year. The lessee had the right to erect any and all buildings he chose, and these were to go with the land, and he was to lose both them and the land if he failed to pay rent, but otherwise he was to part with neither. What else can deprive him of either? In equity, nothing else; and here law and equity agree, or if they do not, equity must prevail. It may be quite rational to suppose that some term short of perpetuity might have been in the minds of the parties, but that they contemplated only a tenancy for a year, or from year to year, although the rent might be promptly paid, is, in view of the contract as a whole, incredible. The letting was for the purpose of having improvements made, and with a stipulation that they, on default of the lessee to pay rent, should become the property of the lessor. There was no value, or little value in the premises for use, without the improvements. Being city property, and not agricultural land, the lessee must have counted on his improvements to make the lots available for use, and this the lessor must have known and understood. It would simply be absurd to construe the contract as a letting from year to year, with a right in the lessor to terminate the holding by notice for anything but the non-payment of rent or non-compliance otherwise with the terms of the contract. We have no doubt upon the subject.

2. It was urged that there was no need for injunction, as the remedy was complete at law. But the case was pending for several terms, and the defendants did not demur. Treating their motion to dismiss as a general demurrer, this motion came, not at the first, but at the fourth term, and was not decided until the sixth term. We think it was too late to raise the question of a common law remedy. See cases on the subject in the *Georgia Reports.* Besides, there is obvious utility in

having the contract construed by a court of equity, its effect declared and the complainant quieted in his possession and use of the premises. The circumstances are peculiar; the executor had no legal right to make or manifest the contract, save by reason of the parol contract previously entered into with the testator; and thus equitable as well as legal facts, both of them material, are involved in the litigation. The court erred in dismissing the bill. *Judgment reversed.*