### 1603.   LANHAM, survivor, *v.* McWILLIAMS, survivor.

1. A lease for one year gave the tenant an option of claiming an additional term of one, two, three, or four years, provided notice of his election be given the landlord ninety days prior to the expiration of the first year; no notice was given, but the tenant nevertheless continued to occupy the premises and paid rent, which the landlord accepted, without question, objection, or explanation on the part of either party, for several months after the expiration of the first year. *Held*, that both the landlord and the tenant are bound for an additional term of one year.

2. Where a lease for a certain term gives the tenant the option of claiming an additional term of one to four years, and the tenant continues in possession after the expiration of the first term, under such circumstances as to show an election of an additional term of one year, there can not be another election to extend the lease over the remaining three years; and continued occupancy after the expiration of the second term, under a parol agreement creating an additional term of more than one year, would create a tenancy at will.

3. The verdict being contrary to law, a new trial should have been granted.

Distraint, from city court of Floyd county—Judge Hamilton. December 2, 1908.

Argued February 12,—Decided April 15, 1908.

*W. W. Mundy, Dean & Dean,* for plaintiff in error.

*John W. & G. E. Maddox,* contra.

POWELL, J.   McWilliams leased a storehouse to Lanham for a period of one year, beginning September 1, 1905, at $125 a month, and the lease gave the tenant the option of claiming an additional term of from two to five years from September 1, 1905 (in other words an additional term of one to four years from September 1, 1906, when his first term expired), provided notice of an intention to claim the additional term was given to the landlord ninety days prior to the expiration of the first year. Some time in the summer of 1906 the landlord went to the tenant and asked him what he intended to do about the lease, and the tenant gave an equivocal reply.   No notice was given of an intention to claim any additional term, but the tenant continued to occupy the premises into the second year and to pay the same rent month by month, and the landlord accepted it without question. Thus the matter stood until some time in June, 1907.   Just what happened after this time depends upon whether the landlord or the tenant was correct in his recollection of the conversations between them, as their evidence is squarely conflicting.   On the one hand, the tenant testified clearly and unequivocally that in June, 1907, the landlord gave him notice that after the expiration of the second year he would increase the rent to $150 a month; that he refused to agree to pay such rent, and a parol agreement was made that the tenancy would be continued at the will of each party.   The landlord denied making any such agreement, but admitted that he threatened to increase the rent, and also that he advertised the property for rent in August before the expiration of the second year.   He stated that he was merely attempting to force the tenant to a clear and unequivocal election of just how long he intended to occupy the premises; that the tenant kept on evading the question and insisting that if "he would only sit steady in the boat and let matters rock along," everything would be all right; that at no time did the tenant state that he would quit the premises at the expiration of the second year, but on the contrary assumed the attitude of having a right to remain in possession of the premises for the full period up to 1910, if he chose so to do; that one time the landlord had an opportunity to rent the premises to a third person, but the tenant objected, and

the landlord then let the matter drop, thinking that the tenant would keep the premises for the full period mentioned above; that a little later he had a clear, unequivocal parol agreement with the tenant, whereby the lease was to be continued in force until September 5, 1910. In November, 1907, the tenant gave the landlord thirty days' notice, and then sent him a check for rent up to that time and surrendered the keys. The landlord sued out a distress warrant for rent for the two following months,—that is, for December, 1907, and January, 1908. The jury returned a verdict in favor of the landlord; and the tenant excepts to the overruling of his motion for a new trial.

1. The motion for a new trial contains, among other grounds, an assignment of error complaining of the following excerpt from the charge of the judge to the jury: "I charge you, that in the event a party passes into possession of property under a contract like this one, with the right of renewal, and continues in possession after the expiration of the first term, without any notice, the law then would bind him to the full term named in the contract. In other words, Lanham & Sons would be bound, under this contract, from September 1, 1906, to September 1, 1910, unless they have been released by the plaintiff in this case, or there had been some verbal change in the contract, or they have an agreement that there would be a tenancy at will. A continuance to occupy the building in question after the expiration of the two-year term provided for in the contract relied upon by the plaintiff would thereby extend the original contract and spread the same over a term of five years from the date thereof, unless said contract has, in some way, been changed or abrogated by the parties."

It has been held that where a lease gives the tenant the right to an extension of his term for an additional period at his option, and the lease is silent as to notice being given to the landlord of the tenant's election to claim the additional term, the mere continuance in possession after the expiration of the first term without notice, and the payment of rent by the tenant and the acceptance thereof by the landlord, will bind both tenant and landlord for the additional term. *Slater* v. *Kimbro*, 91 *Ga.* 217 (18 S. E. 296, 44 Am. St. R. 19); *Hamby* v. *Georgia Iron Co.*, 127 *Ga.* 802 (56 S. E. 1033); *Walker* v. *Wadley*, 124 *Ga.* 275 (52 S. E. 904); *Cavanaugh* v. *Clinch*, 88 *Ga.* 610 (15 S. E. 673). The reason for

this is that the tenant has plainly shown by his conduct that he has elected to claim the additional term. He having a right to continue in possession of the premises lawfully in accordance with the provisions of the lease, it will be presumed that he has availed himself of this right, and not that he is continuing in possession unlawfully as a tenant at sufferance. But these cases expressly recognize. that there is a difference in the effect of holding over, where the lease provides that the tenant must give the landlord notice of his intention to claim the additional term, from what it would be if the contract contained no such provision. The stipulation for notice is primarily for the benefit of the landlord, so that he may be looking out for another tenant in the event there is no election to claim the additional term. The giving of the notice is a condition precedent to the tenant's right to claim the additional term; and his failure to perform it will forfeit his right, unless the landlord waives its non-performance. The tenant's failure to give the notice, combined with his knowledge of the fact that thereby he is forfeiting his right to the additional term, is a circumstance tending to show that he has decided not to avail himself of this right. And therefore in such a case usually there must be more than a mere naked holding over by the tenant to authorize the inference that he has elected to claim the additional term. There should be some additional manifestation of his intention to elect. Cooper v. Joy, 105 Mich. 374. If, however, the holding over is under such circumstances as plainly to show that the landlord has waived the condition as to notice, and that the tenant has elected to continue in possession under the lease, both parties are bound for the additional term. For example, if the lease provides that at the beginning of the second term the rent shall be increased, the mere failure to give notice becomes immaterial, if the tenant holds over and pays the higher rent and the landlord accepts it. The payment and the acceptance of the higher rent, combined with the holding over, show a clear mutual intention to continue the lease,—an intention on the part of the landlord to waive the requirement as to notice and an intention on the part of the tenant to claim the additional term,—and both parties are accordingly bound for the additional term. Long v. Stafford, 103 N. Y. 274 (8 N. E. 522, 525); Insurance Co. v. National Bank, 71 Mo. 58. Intent may be de-

rived from silence as well as from words, especially where silence is accompanied by expressive conduct. And even if the additional term is at the same rental, and without giving notice the tenant nevertheless holds over and nothing is said or done by either party as to the failure to give notice, and the tenant, after the beginning of the second term, pays the rent and the landlord accepts it, the evidence of an intention to waive on the part of the landlord and to elect on the part of the tenant, deduced both from silence and conduct, may be so clear that both parties become bound for the additional term. Probst *v.* Rochester Laundry Co., 171 N. Y. 584 (64 N. E. 504) ; Stone *v.* St. Louis Stamping Co., 155 Mass. 267 (29 N. E. 623) ; Jones on Landlord and Tenant, §342; 24 Cyc. 1003.

In the present case, when in the summer of 1906 the landlord inquired of the tenant whether he intended to claim an additional term and the tenant made an equivocal reply but at no time gave notice that he intended to claim the additional term, the landlord could have dispossessed the tenant at the expiration of the first term, namely September 5, 1906. The equivocal reply of the tenant was not an election, but rather a refusal to elect. The subsequent conduct of the tenant and of the landlord, however, was sufficient to show a waiver of notice on the one hand and an election on the other hand of an additional term. But, under the provisions of the lease, the tenant had the privilege of claiming an additional term of from two to five years from the date of the beginning of the first term; and it therefore becomes necessary to determine which of these additional terms he had elected. The method by which the election was made shows that he had elected the shortest additional term to which he would be entitled. Falley *v.* Gills, 29 Ind. 114. His failure to give the prescribed notice primarily indicated that he had decided not to elect an additional term at all, but his subsequent conduct in holding over and paying rent under the circumstances indicated a change of mind. This change of mind is deduced largely from the fact that, since the tenant had a right to hold over lawfully in accordance with the provisions of the lease, it is to be presumed that his holding over was by virtue of this right and of the landlord's apparent willingness to waive the non-performance of the condition as to notice. His occupancy after the first year is consistent with an election

to renew for the shortest period, and at the same time this construction of his conduct gives due weight to the equivocal state of his mind, evinced by his failure to give the prescribed notice. Falley *v.* Gills, supra. Indeed, the conduct of the landlord a few months before the expiration of the second year indicates clearly that he so understood the tenant's election. His threat to increase the rent and his act in advertising the property for rent indicate that he knew the premises would be vacant at the expiry of the second year.

2, 3. The tenant having made this election and the lease providing for only one election, his right to elect was exhausted, and there could be no further extension under this lease. Falley *v.* Gills, supra. The tenant's occupancy after the expiration of the second term, therefore, was not within the terms of this contract. Jones, L. & T. §336. After both of the terms provided for by the original lease had expired, the parties could not by a parol agreement extend that lease over a further period, exceeding one year. Therefore, adopting the evidence of the landlord as the truth, the parol agreement made in October after the expiration of the second term in the preceding September, whereby it was agreed that the lease should be continued until 1910, had the legal effect of creating a tenancy at will. *Hayes* v. *Atlanta*, 1 *Ga. App.* 25 (57 S. E. 1087). The tenant having given the statutory notice to quit, the verdict of the jury finding him liable for rent after the expiration of thirty days is contrary to law.

This result makes it unnecessary to consider the inaccuracies in the charge of the judge. *Judgment reversed.*