WRIGHT, comptroller-general, *v.* CENTRAL OF GEORGIA RAILWAY COMPANY.

1. A leasehold in a railroad for the full term of 101 years, renewable in like periods forever, at the option of the lessee, creates an interest in the property.
2. Such an interest is assessable for taxation against the owner thereof.
3. A charter exemption from taxation, or a charter limitation as to the extent of the tax to be demanded of a railroad company on its property and appurtenances, will not be so extended as to exempt also the leasehold interest of parties to whom the company leases its property.
4. A railroad company embraces in its system several railroads. Some portion of the railroad is protected by a charter limitation as to the extent of the tax to be demanded of the company on that property. Other portions of the railroad were acquired by the company and as to such portions the charter limitation does not apply. When the railroad company leases its entire system to a lessee, and the lessee makes a return for ad valorem taxation on the whole fee of so much of the railroad as has no charter exemption, and omits from its return for taxation the leasehold interest of so much of the railroad as comes within the charter exemption, and where the proper taxing officer demands a return of the omitted leasehold interest, which is made under protest, the collection of the tax on such omitted leasehold interest will not be enjoined on the ground of lack of due process of law, or because the action of the taxing officer denies to the lessee the equal protection of the laws, or because the taxation of the leasehold interest under these circumstances violates the clause of the State constitution as to uniformity of taxation.
5. Inasmuch as the leases from the Augusta and Savannah and the Southwestern Railroad Companies to the Central of Georgia Railway Company create a claim or interest in the property separate and distinct from the fee, the taxation of the leasehold interest does not infringe any constitutional inhibition, State or Federal, against the impairment of contracts.
6. The comptroller-general's assessment of the leasehold interest of the

Central of Georgia Railway Company in the railroads leased by it from the Augusta and Savannah Railroad Company and the Southwestern Railroad Company is in substantial compliance with the law providing for the assessment and collection of taxes due by railroad companies.

FEBRUARY 13, 1917.

Injunction. Before Judge Ellis. Fulton superior court. January 29, 1916.

William A. Wright, comptroller-general of the State of Georgia, assessed against the Central of Georgia Railway Company taxes for the years 1908 to 1914, inclusive, on its leasehold interest in the Augusta and Savannah Railroad and its leasehold interest in certain portions of the Southwestern Railroad. The comptroller-general issued executions against the railway company on these assessments for State taxes and certain county, municipal, and school-district taxes for the year 1914, and was about to issue similar executions for the prior years when the railway company filed its petition to restrain the comptroller-general from levying and collecting these executions. The case was heard by the judge without a jury, upon the pleadings and stipulations filed in the cause; and a final decree was rendered, perpetually enjoining the defendant from levying and enforcing the tax executions. From this decree the comptroller-general sued out a writ of error.

The Augusta and Waynesboro Railroad Company was incorporated in 1838, and its name was subsequently changed to Augusta and Savannah Railroad by the act of 1856. The thirteenth section of its charter (Acts 1838, p. 174) provides: "That the said railroad and the property of said company shall not be subject to be taxed higher than one half of one per centum on its annual income; and no city or town corporation shall have power to tax the stock of said company, but may tax any property, real or personal, of said company, within the jurisdiction of said city or town, in the same ratio of taxation of like property." The Southwestern Railroad Company was incorporated in 1845. The fourteenth section of its charter (Acts 1845, p. 132) provides: "That the said railway and its appurtenances, and all property therewith connected, shall not be subject to be taxed higher than one half of one per cent. upon its annual net income." In the same year the Muscogee Railroad Company was incorporated, with a provision in its charter (Acts 1845, p. 116) "that the capital stock of the railroad company shall not be taxed by the State higher than one

half of one per cent. upon its net income, nor shall any other tax be levied or collected on the stock of said company." By the Act of 1856 (Acts 1856, p. 187) the Muscogee Railroad Company was united and merged into the Southwestern Railroad Company under the charter of the Southwestern Railroad Company, and all its rights, privileges, and property became a part of the Southwestern Railroad Company. The total mileage of the lines of the Southwestern Railroad Company in Georgia is 329.59 miles. Of this mileage 198.72 miles are covered by the charter provisions as to taxation set forth above. The remaining lines of the Southwestern Railroad Company in Georgia, having a mileage of 130.87 miles, are not covered by the foregoing tax provisions of the charter, but are taxable on ad valorem basis as all property in Georgia is taxable. By act of 1852 (Acts, p. 119) these two companies were authorized to make leases of their railroads to the Central Railroad and Banking Company of Georgia. The charter of the Augusta and Savannah Railroad expressly authorized that corporation to rent or farm out its property. On May 1, 1862, the Augusta and Savannah Railroad leased its railroad and franchises to the Central Railroad and Banking Company of Georgia, and on June 24, 1869, the Southwestern Railroad Company leased its railroad and franchises to the same lessee railway company. On March 4, 1892, all the properties and assets of the Central Railroad and Banking Company of Georgia, including its leasehold interests in the Augusta and Savannah Railroad and in the Southwestern Railroad, passed into the hands of the receivers of the circuit court of the United States for the southern district of Georgia. The greater part of the properties of the Central Railroad and Banking Company of Georgia, including these leasehold interests, were purchased by Thomas and Ryan at judicial sale. On October 17, 1895, these purchasers and their associates were incorporated under the name of the Central of Georgia Railway Company. The Southwestern Railroad Company, on October 17, 1895, entered into a contract with the Central of Georgia Railway Company, whereby the lease of its railroad to the Central Railroad and Banking Company was modified and renewed, and the modified lease was to run for the full term of 101 years, renewable in like periods, upon the same terms, forever, the right of renewal to be in conformity to the laws authorizing it; and on October 24, 1895, the

Augusta and Savannah Railroad also leased its railroad to the Central of Georgia Railway Company, the lease being substantially similar to the lease of the Southwestern Railroad Company. The consideration of each lease was the payment of an annual rental to the leasing companies of five per cent. upon their respective capital stocks. On these two leasehold interests the comptroller-general is seeking to collect the tax from the Central of Georgia Railway Company. The comptroller-general demanded of the Central of Georgia Railway Company that it make a return of the value of its lease and lease privileges and other interests less than the fee, owned by the Central of Georgia Railway Company in and concerning the railroads in its system of railways respectively known as the Augusta and Savannah Railroad and the Southwestern Railroad. The railway company made a return under protest, denying the taxability of these leasehold interests. In addition to assessing the leasehold interest for State taxation, the comptroller-general assessed taxes with respect to these leasehold interests in favor of the various counties, municipalities, and school districts through which the leased railroad runs in the case of the Augusta and Savannah, and through which the charter-tax lines run in the case of the Southwestern Railroad. The tax to be assessed in favor of counties, municipalities, and school districts was arrived at by first assigning to each of the political subdivisions such proportion of the total assessed valuation of the leasehold interest as the mileage in such political subdivision bore to the total mileage of the leased line in the case of the Augusta and Savannah and of the charter-tax lines in the case of the Southwestern Railroad, and then multiplying that result by the tax rate of each of these respective political subdivisions. The grounds of attack upon the right of the State and its political subdivisions to tax these leasehold interests appear more fully in the opinion.

*John C. Hart* and *Samuel H. Sibley,* for plaintiff in error.

*Lawton & Cunningham* and *Little, Powell, Smith & Goldstein,* contra.

EVANS, P. J. (After stating the foregoing facts.)

1. The leases are for the full term of 101 years, renewable in like periods upon the same terms forever, at the option of the lessee. A lease for a term of years is a chattel real; it is personal estate and not real. At common law the term "real estate" does

not include anything short of a freehold. 2 Kent's Com. *342, 3 Id. *401. An estate for years in this State passes as realty. Civil Code, § 3685. It is not necessary to go into an analysis of the leasehold interest created by this lease, to determine whether the leasehold interest is to be regarded as personalty or as realty; if it be either, it is property. The constitution requires that taxation shall be ad valorem on all property not expressly exempted, and relatively to the question of taxation it makes no substantial difference whether the property of the beneficial owner be classed as realty or personalty. *Wells* v. *Savannah,* 87 *Ga.* 397 (13 S. E. 442) ; *Atlanta National Building and Loan Association* v. *Stewart,* 109 *Ga.* 80 (8), 81 (35 S. E. 73). A lease of the character of those under consideration is the practical equivalent of a sale of the property for a series of terms without end, and the lessee certainly acquires an interest in the property. The creditors of the predecessor of the present lessee esteemed the leases of such value as to have them administered as assets in a receivership proceeding. The present lessee is paying a substantial rent charge for the control and possession of the property for an indefinite time. A lessee under a lease for 101 years, renewable forever at his option, has a right both to possession and profits, which may be projected indefinitely into the future. Surely such a right creates an interest in the property.

2. Is a leasehold interest taxable in Georgia? The constitution, art. 7, sec. 2, par. 1 (Civil Code, § 6553), declares that "all taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." The article of the Civil Code on persons and property subject to taxation embraces § 1008, which reads as follows: "All persons owning any mineral or timber interests, or any other interest or claim in and to land less than the fee, shall return the same for taxation and pay taxes on the same as any other property." It is argued that this section only applies to cases where the interest attaches to something tangible which may be carved out of the property, as in the case of timber, turpentine, minerals, and the like, and has no application to leases of the kind we have under consideration. The language of the section is too comprehensive to admit of such a restriction, unless it be

conceded that a lease of land for a long period of time, renewable in perpetuity at the option of the lessee, is neither an interest nor claim in and to the land. Such a concession can hardly be made when we come to consider what a valuable property right such a lease would be. Under these leases the lessee took the entire property to hold, if it pleased, in perpetuity, subject to an annual charge of five per cent. on the capital stock. Certainly this valuable right creates some interest or claim in the property. See P., W. & B. R. Co. *v.* Appeal Tax Court of Baltimore City, 50 Md. 397. It is contended, in support of the proposition that a leasehold interest is not taxable, that the rule at common law was that the landlord was bound to pay all State and municipal taxes upon the property, and that the common-law rule is in force in Georgia. But we apprehend that this rule has never been applied to leases of the character of these, which extend into perpetuity at the election of the lessee. The scheme of taxation in this State is that taxes are chargeable against the owner of property, if known. Life-tenants and those who own and enjoy the property are chargeable with the tax thereon. Civil Code (1910), § 1018. The legislature had in mind that the owner of property might create in another an interest in his property, which interest was subject to taxation separately from the fee in the property, and accordingly in the formulation of a tax return required an answer to the question, "What is the value of your leases, or leased privileges, or other assets of like character?" Civil Code, § 1087. It may be that sections 1008 and 1087 of the Civil Code were only intended to cover leases which create an interest in the property, and were not intended to apply to the ordinary case of landlord and tenant where the tenant has only a usufructuary right in the property. Be- that as it may, these sections are applicable to leases of the kind we have under consideration. .

3. Will the charter limitations upon the extent of the tax to be demanded of the Southwestern Railroad and the Augusta and Savannah Railroad be extended to the lessee, so as to exempt from taxation the leasehold interest which it owns in these properties? Our first inquiry will be to determine whether this question has been foreclosed by the recent decision of Wright *v.* Central of Georgia Railway Company, 236 U. S. 674 (35 Sup. Ct. 471, 59 L. ed. 781). That case involved the State's right to collect from

the Central of Georgia Railway Company an ad valorem tax on the real estate, road-bed, and franchise value, after crediting one half of one per cent. of the net income, on that portion of its property known in its system respectively as the Augusta and Savannah Railroad and the Southwestern Railroad. The court in the majority opinion did not base its decision on the leases as technically effective to pass by assignment the contract in the charters from the lessors to the lessee, but reached its conclusion from a consideration of the specific transaction as permitted and encouraged by the charter act of 1838 and the leasing act of 1852. These statutes were construed as making the fee exempt from other taxation than that provided for, in favor of the lessee as well as the lessor. As we understand this decision, the State is prohibited by its charter contracts with the Southwestern Railroad Company and the Augusta and Savannah Railroad Company from collecting from the lessee, the Central of Georgia Railway Company, any tax assessed against the fee of the property and appurtenances of the leasing companies in the possession and control of the lessee, beyond one half of one per cent. upon their respective annual incomes. The comptroller-general is not now seeking to assess and collect a tax on the fee in the property of the leasing companies, but a tax from the "Central of Georgia Railway Company as lessee on its lease and leased privileges and other interests less than the fee" of the Augusta and Savannah and the Southwestern Railroads, operated by the lessee as a part of its system. The subject-matter of the first effort to collect a tax was on the fee of the leasing companies; the present tax fi. fas. run against the lessee for the tax on its lease, leasehold privileges, and other interests less than the fee. The present question was not involved in the case before the United States Supreme Court.

Again, it is insisted that under former adjudications of this court, respecting a construction of these identical tax limitations, a settled and definite interpretation has been given to these charter provisions as excluding the State from taxing the leasehold interest of the lessee on the basis of ad valorem taxation. Perhaps the most pertinent observation on this subject may be found in the case of *Goldsmith* v. *Augusta & Savannah Railroad Co.*, 62 *Ga.* 468, in the following language: "The lease of the road [A. & S. R. Co.] to another company by authority of the legislature does not affect

the basis of taxation. The income contemplated by the charter is not annual rental, but the earnings of the road. The act authorizing the lease not having any provision in regard to taxation, the limit in the charter was not lost or changed by the lease." This is not an authoritative ruling, for the reason that it is confessedly an *obiter dictum*, the only question before the court being one of jurisdiction; and the learned Justice delivering the opinion said that he made the ruling "to indicate the opinion of this court on questions necessary to a settlement of the case, should the parties desire a settlement." Moreover, the lessee was not a party, and the statement bore only on the lessor's liability for the tax. So far as concerns the question of the taxability of the lessee's interest arising out of the lease on an ad valorem basis, it is res integra in this State.

A charter exemption from taxation, or a charter limitation as to the extent of the tax to be demanded of a railroad company on its property and appurtenances, will not be so extended as to exempt also the leasehold interest of parties to whom the company leases its property. Jetton *v.* University of the South, 208 U. S. 489 (28 Sup. Ct. 375, 52 L. ed. 584). In that case the State of Tennessee granted an exemption to the university of 1000 acres of land. The university gave leases of lots within this tract. The State authorized the taxing of leasehold interests. The university, and certain individuals claiming to be lessees of certain land from the university, brought a bill in equity to restrain the State's taxing officers from taking any proceedings to collect taxes from the lessees of the university within the limits of the thousand acres exempted in the university charter. The State of Tennessee, subsequently to the grant of the charter and the making of the leases (which were non-assignable except by the consent of the university), enacted legislation authorizing the taxing of a leasehold interest. The Supreme Court of the United States held that the tax assessment against the lessees on their leasehold interest was not a tax against the university as owner of the fee, nor was it a tax on the university's income from the leases; that the tax, in form and substance, was upon a separate interest in real estate granted by the lessor, and was assessed against the owner of such separate interest, and was not in violation of the charter exemption. In discussing the nature of the interest, Mr. Justice Peckham, speaking in

behalf of a unanimous court, said: "What is the exact interest of the lessee in the land it is not necessary here to determine. It is plain that he has some interest in it, and that interest is distinct from the fee, and may be taxed when the fee is exempt from taxation."

4.   Up to this point we have endeavored to establish these propositions: that a lease of a railroad for 101 years for a stated annual rental, renewable in like periods upon the same terms, creates an interest or claim in the property; that the owner of any interest or claim in property less than the fee shall return the same for taxation, and that the charter limitation upon the extent of the tax to be demanded of the Southwestern and the Augusta and Savannah Railroad Companies will not be so extended as to exempt from taxation the leasehold interest of the Central of Georgia Railway Company in these properties. We will now proceed to examine whether these propositions can be sustained as against constitutional and other objections urged by the lessee. The lease of the Southwestern Railroad Company embraces a system of roads some portions of which have no charter exemption from ad valorem taxation. It is urged that the taxation of the leasehold interests of these portions of the system which have a charter limitation as to the extent of the tax which may be demanded, and the omission to tax other leasehold interests in the system, is a denial of due process of law and an unjust and unequal classification of property. The record discloses that, prior to any call for a return of any leasehold interest, the lessee had returned for ad valorem taxation the entire fee in all portions of its system, save such as had a charter exemption. In the case of those portions of the railroad which had a charter exemption from ad valorem taxation no return was made by the lessee of its interest in the property, and it is a tax on this interest of the lessee that is now sought to be collected. The comptroller-general assessed to the lessee the tax on that portion of its lines which has no charter exemption on the fee, and the lessee had returned the fee in that portion for taxation. The leasehold interest in the railroads so returned was taxed in taxing the entire fee. The comptroller-general recognized as fair the rule that if the whole fee was returned, the assessment on the whole fee, whether returned by lessor or lessee, necessarily embraced the leasehold interest on the non-charter lines. In the

matter of the leasehold interest of the lessee in the property leased from the Augusta and Savannah and the Southwestern Railroad Companies, a peculiar situation existed. This anomalous condition resulted from a tax limitation in the charters of these companies, limiting a tax on the fee assessable against them, which tax limitation was not repealed by the constitution of 1877, which demanded uniform ad valorem tax upon the same class of subjects. These railroad companies, by their own act, created an interest in the property in the lessee. This interest, being a separate and distinct subject class for taxation, either the constitutional mandate must be ignored or the leasehold interest of the lessee must be assessed as was done by the comptroller-general. This action of the comptroller-general neither violated the due-process clause of the constitution, State or Federal, nor denied the lessee the equal protection of the laws, nor violated the tax-uniformity clause of the State constitution.

5. It is only necessary to observe that inasmuch as the leases from the Augusta and Savannah and the Southwestern Railroad Companies to the Central of Georgia Railway Company create a claim or interest in the property separate and distinct from the fee, the taxation of the leasehold interest does not infringe any constitutional inhibition, State or Federal, against the violation or impairment of contracts.

6. And lastly, the point is made that there is no machinery provided by law for the distribution of a tax on a leasehold interest among the counties, municipalities, and school districts located on the leased lines, and in the absence of such machinery the leasehold interest can not be taxed by such counties, municipalities, and school districts. This question is fraught with difficulty, and especially with reference to the lease of the Southwestern Railroad Company. The latter company owns a continuous line, made up of railroads whose charters have tax limitations and of railroads whose charters contain no exemptions. The charter-exemption lines in the system are not continuous, having gaps between them supplied by railroads which have no tax exemptions. If there were as many lessees as there are different railroads in the Southwestern system, the assessment of the taxes of each road would be relieved of any serious complexity. It is the union of these different roads into one system owned by one company, and a lease

by that company of all of them to a single lessee, that causes the complications. The comptroller-general solved the problem in this manner: He called upon the lessee to return the value of its leases and lease privileges and other interests less than the fee, owned by it in and concerning the railroads in its system of railways respectively known as the Augusta and Savannah Railroad, extending from Augusta, Ga., to Millen Ga., and those portions of the Southwestern Railroad extending from Macon to Americus, Cuthbert to Fort Gaines, Fort Valley to Columbus, and Smithville to Cuthbert. The lessee made a return under protest, fixing the values in aggregate sums for its interest in the property of the lessor, and denied the taxability of the lease interest in these properties. A mileage basis was furnished, but no separate mileage valuation was placed in the return. The valuation of the aggregate mileage was placed in one sum. The comptroller-general acted on the implication that the mileage was of equal value, and applied the general law in making the assessments on that basis. We think the assessments were made in substantial accord with the general law for the assessment of railroads. This law and the comptroller's application of it may be more or less imperfect, but all modes of taxation are subject to this criticism. See *Taylor v. Secor*, 92 U. S. 575 (23 L. ed. 663); *Atlanta Asso.* v. *Stewart, supra.* *Judgment reversed. All the Justices concur.*