WILLIAMS *et al. v.* J. M. HIGH CO. *et al.*

No. 15361. JANUARY 10, 1946.

234

*Alston, Foster, Sibley & Miller,* for plaintiffs.

*Francis G. Jones Jr.,* and *Smith, Kilpatrick, Cody, Rogers & McClatchey,* for defendants.

ATKINSON, Justice. (After stating the foregoing facts.) ■ The granting of the privilege to J. M. High Company to renew the lease, as set forth in item 8 of the will under consideration, if otherwise valid, would subject the property therein described to the possibility of a renewal and re-renewal of a lease of the

premises in perpetuity, as in contemplation of law the life of a corporation may be so extended. There is authority in this State to the effect that a lease may be executed in perpetuity. It was so held in *Atkinson* v. *Orr,* 83 *Ga.* 34 (9 S. E. 787), where a vacant city lot was leased for a specified annual rental. The same lease was before this court and again considered in *Penick* v. *Atkinson,* 139 *Ga.* 649 (77 S. E. 1055, 46 L. R. A. (N. S.) 284, Ann. Cas. 1914B, 842), where it was held: "A lease of land to A. for as long as he, his heirs or assigns shall pay a stipulated annual ground rent to the lessor or his heirs or assigns, and shall comply with the covenants therein stated, creates a base or determinable fee, and the property should be taxed to the lessee as owner." It was further held: that the lessee took more than a leasehold interest; that he took an estate in fee defeasible upon non-compliance with the conditions named; that the lessor's reserving of an annual rent charge, so long as the estate granted had not been forfeited, was an incorporeal hereditament; and that both interests were assignable and inheritable. The ruling there announced had previously been made in *Wells* v. *Savannah,* 87 *Ga.* 397 (13 S. E. 442). It must be borne in mind though that in each of the foregoing cases the lessee's right was both inheritable and assignable. The provisions of the will in the instant case could not be construed as conveying either of these rights, as the only right given is to exercise the privilege of continuing this lease by renewal and re-renewal, and is conferred solely on J. M. High Company. The right there given could be surrendered, but not assigned to another. The right to the possession under the lease, without the privilege of assignment, would not amount to a fee, either base or defeasible. But, under the terms of this will, it is clear that it was the intent of the testatrix to give the right of possession of the premises to J. M. High Company, if it desired to occupy them, for a fair rental value, which, at least, would be the devise of a leasehold interest. The lessee in the instant case being a corporation, which in contemplation of law may have a perpetual life, it is insisted that the provision for such a lease and the terms of renewal are void as being in violation of the rule against perpetuities. In *Georgia Power Co.* v. *Decatur,* 179 *Ga.* 471 (2) (176 S. E. 494), it was held that a lease for 999 years may be considered a perpetual lease. While the exact question here presented has

not been passed upon by this court, it seems to be an almost universally recognized rule in other jurisdictions that a perpetual lease, or a perpetual right to renew a lease, is not violative of the rule against perpetuities. In 32 Am. Jur. 812, § 967, it is stated: "It has been generally held that a provision in a lease for perpetual renewal is not violative either of the rule against perpetuities or of statutes limiting the period during which the absolute power of alienation may be suspended." With such a lease in existence, there would be at all times, or at least at the termination of the period during which the powers of alienation could be suspended, persons who, by joining, could convey the fee. Under the title "Perpetuities and Restraints on Alienation," in 41 Am. Jur. 78, § 34, there appears a rule similar to the one above quoted. In 35 C. J. 1017, § 144, it is stated: "Where the intention to create a right of renewal in perpetuity is clearly and unambiguously expressed, the obligation so created is valid and enforceable." Additional authority for the above rule will be found in Thaw v. Gaffney, 75 W. Va. 229 (83 S. E. 983, 3 A. L. R. 495), and annotations on p. 498.

■ The conditions set forth in this item of the will, to wit, "as long as the corporation continues in business, is financially successful, and desires to occupy these properties," are not vague, uncertain, or illegal. Such conditions could be construed to mean nothing more or less than that, if J. M. High Company continued in business, was financially able to pay the rent, and desired to retain the premises, it would have a right to elect to do so, and the amount of rent to be paid would then be fixed as provided by the will.

■ Nor does the provision in this item that, as to "these properties, they are not to be sold," violate the rule against perpetuities or the alienation of property. Every other item of the will, which created a life estate in realty in either daughter, including the residuary clause, permitted a sale of the entire fee in the property by the life tenant, with a provision for reinvestment of the funds under the same terms and conditions as applied to the property sold. Construing the will in its entirety, the testatrix's intention in the use of this expression was, not to prevent the sale of this property at any time; but, following the general scheme of disposition as used in reference to other realty in which she gave her

daughters a life interest, it appears that the expression, "they are not to be sold," was used to prohibit the right by the life tenants to sell this realty for reinvestment, as distinguished from their right to sell other realty.

█ It is also insisted by the plaintiffs in error that a portion of item 15, when construed in connection with item 8, is illegal, void, and against public policy, in that it would require the estate to be held open with the executrices remaining in office forever. This item, after making provision for them, provided that they act as guardians when a minor becomes vested with any interest, and that they have the power of mortgage for improvements. It was then provided that the executrices and guardians have the power of lease and sale, the sale being confined to improvements on other property of the same interest or for certain specified reinvestments. The same item then continued: "The same full power of mortgage for improvement also power of sale shall exist in the executrices and guardians as to the properties on Hunter and Whitehall Streets now occupied by J. M. High Company at any time said corporation no longer desires to occupy them, and in the event of sale the proceeds shall be separately invested and carried on the books of the executrices in a separate account and such reinvestment shall be governed in all respects by the provisions hereinabove set out as to the disposition of said real estate itself." The powers of the executrices and guardians as to the mortgage and sale of the premises occupied by J. M. High Company were granted only when "said corporation no longer desires to occupy them." It will be observed that there was no effort to place a restraint upon a sale by a life tenant and a remainderman subject to the rights of J. M. High Company.

Item 8 of the will provided certain duties for the executrices to perform in determining the fair rental value of the building; and item 15, in providing for a sale when the corporation no longer desires to occupy the premises, also defined the duties of the executrices as to the proceeds of the sale. It is insisted that—inasmuch as the right of the corporation to lease the premises may extend its occupancy in perpetuity, and the requirements of the will impose upon the executrices duties in fixing the amount of rent and also in accounting for the proceeds of the sale after the corporation no longer occupies the premises—this would require the

executrices to remain as such in perpetuity. If it were absolutely essential for the executrices to perform these services, and no other means of having them performed were possible under the law, we might agree with this view. But in this State an executor, in a limited sense, is a trustee; and, where the duties imposed under the terms of the will also partake of the nature of a continuing trustee, this would raise an equitable trust. *Willingham* v. *Bentley,* 20 *Ga.* 783; *Johns* v. *Johns,* 23 *Ga.* 31; *Gardner* v. *Weeks,* 32 *Ga.* 696; *Freeman* v. *Brown,* 115 *Ga.* 23, 34 (41 S. E. 385); *Prince* v. *Barrow,* 120 *Ga.* 810, 824 (48 S. E. 412); Redfearn on Wills and Administration of Estates (Rev. ed.), 329, § 190. Should the two executrices die and the bank, which was named as executor in that event, decline to serve, the trust would not terminate, as a trust shall never fail for the want of a trustee. Code, § 108-302. This case differs from *Smith* v. *Dunwoody,* 19 *Ga.* 237, as there the whole of the estate was given in perpetual trust to the executors as such for the purposes therein mentioned. On page 256, it was stated: "The whole 'annual income' is given to them and their heirs forever, viz.: indefinitely and without limitation of time, and without any disposition over, of the capital, to any one else." In the instant case, the title was not put into the executrices. Should they complete all their duties except such as relate to this realty and be discharged, or should they resign or die and the estate be unrepresented, as to this right of J. M. High Company to lease, the parties at interest under the will could be effectively represented by a trustee appointed by the court. Accordingly, so much of items 8 and 15 as relates to the duties, or the tenure of office of the executrices, does not vitiate or make illegal, void, or against public policy, the right of lease given to J. M. High Company.

■ The life tenants and remaindermen, by amendment, set up that they had received an offer for the sale of the property occupied by J. M. High Company, and prayed for a declaratory judgment, as authorized by the act approved February 12, 1945 (Ga. L. 1945, p. 137), defining the "rights, duties, and liabilities" of the parties in respect to a sale of said premises. By the fourth paragraph of the decree it is provided that "said properties described in the eighth item of the will are not to be sold by the executrices (or anyone else) so long as the conditions of occupancy are met with as hereinbefore set out."

We think that the trial court erred in a portion of the decree. There are two limitations in the will on the sale of this realty. The life tenants cannot sell the entire fee for reinvestment, even subject to the rights of J. M. High Company. Neither can the executrices and guardians sell as long as the company desires to occupy the premises under the conditions named in the will. But there is no restraint upon the sale by the life tenants as to their life interests, or upon the remaindermen as to their remainder interests. Each could sell her interest, or could join in conveying the entire interest, subject, in either event, to the rights of J. M. High Company.

The judgment of the lower court being reversed as to a portion of the fourth paragraph of the decree, and this being a substantial modification of the judgment, it would ordinarily follow that the costs of the writ of error would be taxed against the defendant in error. *Anderson* v. *Beasley,* 169 *Ga.* 720 (151 S. E. 360); *Equitable Life Assurance Soc.* v. *Gillam,* 195 *Ga.* 797, 807 (25 S. E. 686, 147 A. L. R. 1008). However, in the instant case, the portion of the ruling of the lower court which is reversed having been procured as the result of a prayer by the life tenants and remaindermen for a declaratory judgment, and the part of the decree reversed having in no way reduced the rights of the defendants in error which were obtained in the lower court, the costs will not be assessed against the defendants in error.

*Judgment affirmed in part, and reversed in part. All the Justices concur.*