## 44252.   CHALKLEY v. WARD.

ARGUED FEBRUARY 4, 1969—DECIDED FEBRUARY 21, 1969.

*Ernest C. Britton, Brooks Culpepper,* for appellant.

*John A. Smith, Sr.,* for appellee.

EBERHARDT, Judge. ■ The language used in this lease providing that the lessee is given the option to "renew and extend" it by the giving of written notice to the lessor "of such renewal," that it shall be "renewed annually in this same manner," and that the rentals for all "renewals or extensions" under the option shall be payable on the same date of each year of such "renewal or extension" is inexact, for "renewal" contemplates the execution of a new contract, whereas "extension" does not. *Citizens Oil Co. v. Head,* 201 Ga. 542 (2) (40 SE2d 559). And see *Walker v. Brooks Simmons Co.,* 44 Ga. App. 470 (161 SE 659).

If this lease provides for a *renewal*—the obtaining of a new contract each year—the position of the lessor that the lessee's

failure to obtain one resulted in his occupying the status of a tenant at will would appear to be correct, whereas if an extension is what the contract provides for we would, for reasons which will appear, conclude that his status continued to be that of a lessee each year. What, then, does the language "renew or extend" as used here mean? What is its effect?

A lease contract is construed against the lessor, unless it was prepared by or its terms were dictated by the lessee. *Felder v. Oldham*, 199 Ga. 820, 826 (35 SE2d 497, 164 ALR 415); *Farm Supply Co. of Albany v. Cook*, 116 Ga. App. 814 (159 SE2d 128). Though the contract here was reached by negotiation between the parties and drafted by an attorney who represented both of them, the lessor was in position to negotiate from a position of strength and this would favor a construction of the agreement as one to extend the time or term rather than of an agreement to execute a new contract each year.

In *Hamby v. Georgia Iron Co.*, 127 Ga. 792, 801 (56 SE 1033) the court was faced with a similar problem where the lease provided: "The term of this contract is two years from and including April 1, 1904, and the privilege is granted by the parties of the first part and expressly reserved unto the parties of the second part, of renewing and extending this contract for a period of three years from, after and including the 1st day of April, 1906." Concerning this the court held: "It becomes necessary to determine the question of whether this stipulation is such as to provide for a renewal of the lease, or a mere extension of the time first stipulated in the lease. The consequences which would flow from the construction that it provides for a renewal would be different from those which would flow from construing it as providing for a mere extension. If the stipulation contemplates a new contract at the expiration of the two years, then it would be a renewal, and the execution of a new lease would be indispensable. In this contingency it would be incumbent upon the lessee to notify the lessor, before the term expired, that he had exercised his option to take a new lease. On the other hand, if the stipulation is to be construed as merely an extension of the time under the old lease, and no new agreement was contemplated, then, no notice being expressly provided

for in the contract, if the lessee merely remained in possession by virtue of the contract after expiration of the two years, this would bind both the lessee and the lessor to an extension for the additional time stipulated in the lease, and no further notice would be required. . . The stipulation in question uses both the words renew and extend, but when it is construed as a whole, it is manifest that it was intended merely to extend the time upon all the terms and conditions stated in the lease. While the words renew and extend do not always mean the same thing, still, in interpreting a stipulation of the character above referred to, the context must be considered, and the intent of the parties must be arrived at, and this may, under certain circumstances, require that these words shall be given a similar meaning." P. 802. To the same effect see *Scruggs v. Purvis*, 218 Ga. 40 (126 SE2d 208). And see *Felder v. Oldham*, 199 Ga. 820, 826, supra.

Notice was not specifically provided for in *Hamby* or in *Scruggs*, but this lease does provide that if the lessee is to exercise his option to "renew and extend" he must give written notice of his intention to do so and execute a new note for the rental before December 1 of each year. Does this require that we reach a different conclusion than was reached in *Hamby* and *Scruggs?* It would unless we can conclude that the lessor has waived the notice provision or that she is estopped from relying on it. She permitted the lessee to give his note for the rental, to continue in occupancy and pay the taxes on the land for the years 1963, 1964, 1965 and 1966. When the note became due it was paid each time and she accepted the money. All of this was without the giving of any written notice by the lessee that he was exercising the option. It does not provide for any new terms or renegotiation of terms in "renewing or extending." See *Saunders v. Sasser*, 86 Ga. App. 499 (1b) (71 SE2d 709); *Pritchett v. King*, 56 Ga. App. 788 (3) (194 SE 44).

The construction placed upon the lease, as evidenced by the conduct of the parties, is to be considered. *Asa G. Candler, Inc. v. Georgia Theater Co.*, 148 Ga. 188 (5) (96 SE 226, LRA 1918F 389). Does the conduct of the parties here indicate a construction of the lease by them that it provided for an extension

rather than a renewal of the old lease? It does. The tenant was permitted to give his note for the rental, as called for by the old lease, on December 1 of 1962, 1963, 1964 and 1965, to occupy and use the lands in the same manner as had been done during the original term, to execute his note for the annual rental the payment of which lessor has accepted, to pay the taxes as had been done for the original term—all without the execution of any new lease. The tenor of the whole instrument is that if the tenant gives the notice of intention and executes a rental note for the same amount each year, he is entitled to continue the use and occupancy of the land *on the same terms* for another year, and the parties have so treated it. The effect of what they have done since the expiration of the original term is to extend the time or term of the lease. *Lanham v. McWilliams,* 6 Ga. App. 85 (1) (64 SE 294). Cf. *King & Prince Surf Hotel v. McLendon,* 74 Ga. App. 805 (2a) (41 SE2d 556).

■ ■ *Code* § 20-116 provides that "Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given the other of intention to rely on the exact terms of the agreement. Until such notice, the departure is a quasi new agreement." This *Code* section applies to the situation here, and when the lessor accepted the rent note, allowed the tenant to continue occupancy of the premises and to pay the taxes during the four years following expiration of the original term without requiring the written notice of intention, there was a temporary mutual departure from that provision and a quasi new agreement which did not require the notice. Consequently, the rulings in *Hamby* and *Scruggs* apply to this situation.

The notice which Mrs. Chalkley, the lessor, gave to Ward, the tenant, that his lease had terminated and that she desired him to quit the premises at the end of 1966 was grounded on the failure of Ward to give written notice in 1962 and each year thereafter, before December 1, of his intention to renew or extend for the following year. While this notice does not say to the tenant that she is thereafter requiring strict adherence to

the terms of the lease, it certainly is sufficient to let the tenant know that it is her intention. Accordingly, and before December 1 of 1966 the tenant gave the written notice called for by the lease and executed to the lessor his note for the 1967 rental. The lessor having terminated the temporary mutual disregard of the notice provision, the tenant complied by giving it.

■ Moreover, by acceptance of the rent notes in 1962, 1963, 1964 and 1965 Mrs. Chalkley waived the right to declare a forfeiture on account of Ward's failure to give the written notice of his intention to extend the lease. By this act she admitted the continuance of the lease and waived any prior forfeiture. "A landlord who recognizes a lease as a subsisting, operative contract should not, in equity or in good morals, be permitted to insist upon a past forfeiture, if there has been one. And it has been held, both in England and in this country, that a landlord by acceptance from his tenant of rent accruing after a breach of the condition in the lease, with knowledge that the breach had been committed, waives the right to declare the lease forfeited on account of the breach." *Guptill v. Macon Stone Supply Co.*, 140 Ga. 696, 698 (79 SE 854, AC 1915A 1249). Accord: *McCranie v. Rigsby*, 172 Ga. 860 (159 SE 233); *Oastler v. Wright*, 201 Ga. 649 (40 SE2d 531); *Shiflett v. Anchor Rome Mills*, 78 Ga. App. 428, 431 (2) (50 SE2d 853); *Gay v. American Oil Co.*, 115 Ga. App. 18 (153 SE2d 612). See also, *Allen v. Allen*, 154 Ga. 581 (115 SE 17). Thus, there was no default on which the lessor could move to terminate the lease.

■ The lessor contends that the provisions of this lease, allowing the term to be extended each year "during the life of the lessor," if permitted to stand would amount to a sale of her property and create in the lessee an estate for years, which the parties never intended. The effect of the lease is to grant to the lessee a term for the remainder of the life estate, absolute for the first year and optional with the lessee as to future continuance under the terms and conditions prescribed in the contract. *Walker v. Wadley*, 124 Ga. 275 (1) (52 SE 904).[2] We con-

---

[2]Cf. *Atkinson v. Orr*, 83 Ga. 34 (9 SE 787); *Penick v. Atkinson*, 139 Ga. 649 (77 SE 1055, 46 LRA (NS) 284, AC 1914B

clude that this was the intention of the parties, for it is clearly stated in the contract. The language which the parties used in making the contract is to be looked to in determining what their intention was, which when ascertained will prevail over all other considerations. *McKibben v. Fourth Nat. Bank*, 32 Ga. App. 222 (1) (122 SE 891). "The intention is to be gathered largely from what the parties say, the words they use, and, when ascertained, both law and justice require it to be given full effect." *Malsby & Avery v. Young*, 104 Ga. 205, 213 (30 SE 854).

The lessor testified that she had intended to lease the land to the lessee for five years only and that she did not understand that he was to have it during her life-estate. The language of the lease refutes this. The tenant testified that he discussed with the lessor the matter of leasing her land during the remainder of her life-estate and that she agreed to it, after which they went together to the office of an attorney (who represented both of them) and had it prepared and signed. Both of them admit that when the lease had been prepared the attorney read it to them together, after which it was signed.

■ Enumerations of error numbered 3, 9, 10, 11 and 12, all dealing with portions of the charge which appellant contends were erroneous, present no question for our decision inasmuch as there was no exception to these portions of the charge before verdict, as required by *Code Ann.* § 70-207 (a), nor do we find any of them to be harmful as a matter of law.

■ Enumeration of error numbered 6, dealing with a colloquy between court and counsel relative to the duty of a party to a contract to read it before signing and the consequence of his failure to do so shows no error requiring the grant of a new

842) ; *Wright v. Central of Ga. R. Co.*, 146 Ga. 406 (91 SE 471) ; *Georgia Power Co. v. City of Decatur*, 179 Ga. 471, 485 (176 SE 494) ; *Williams v. J. M. High Co.*, 200 Ga. 230 (36 SE2d 667, 162 ALR 1139) ; *Smith v. Aggregate Supply Co.*, 214 Ga. 20 (102 SE2d 539), where it was held that a provision in a lease that it may be extended in perpetuity by the payment of the stipulated rental when due is not violative of the rule against perpetuities.

trial. There was no objection made by counsel at the time and no motion for a mistrial. *Armstrong v. State,* 181 Ga. 538, 539 (183 SE 67); *Morris v. State,* 185 Ga. 67 (1) (194 SE 214); *Ealy v. Tolbert,* 210 Ga. 96 (2) (78 SE2d 26).

■ Enumeration of error number 7 relative to a question directed by the court to the defendant while on the stand and the answer of the witness as being a conclusion of the witness as to the sufficiency of his written notice presents no question for decision by this court. There was no objection to the question or the answer at the time, no motion to exclude the answer, and no motion for mistrial because of the question or answer. *Georgia Power Co. v. Manley,* 47 Ga. App. 431 (2) (170 SE 543); *Kay v. Benson,* 152 Ga. 185 (108 SE 779).

■ It is contended by enumeration of error number 4 that it was error for the court to construe the contract and that this should have been submitted to the jury. We do not agree. Construction of written contracts, even if they are ambiguous, is a matter for the court and no jury question arises unless after application of applicable rules of construction the ambiguity remains. *Farm Supply Co. of Albany v. Cook,* 116 Ga. App. 814 (1), supra; *Davis v. United &c. Life Ins. Co.,* 215 Ga. 521 (2) (111 SE2d 488). The ambiguity here is only as to whether there was an option to renew, requiring the execution of a new lease, or an option to extend, permitting an extension of the term without a new contract. When the rules of construction laid down by the Supreme Court dealing with similar language in leases are applied to this lease the ambiguity is resolved. Consequently, constructon by the court was proper.

■ All other enumerations of error are disposed of by the rulings made in the several divisions of this opinion.

*Judgment affirmed. Bell, P. J., and Deen, J., concur.*