**FORD MOTOR CREDIT COMPANY,**
**Plaintiff-Appellee,**

v.

**A. W. LEDBETTER, Individually, R. H. Ledbetter, Individually, and d b a A. W. Jr., and R. H. Ledbetter, a partnership, Defendants-Appellants.**

**No. 78–1194**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Oct. 27, 1978.

Rehearing Denied Nov. 28, 1978.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

William E. Sumner, Anneke K. Woodward, Atlanta, Ga., for defendants-appellants.

Levine & D'Alessio, Morton P. Levine, Burgess W. Stone, Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, COLEMAN and VANCE, Circuit Judges.

PER CURIAM:

Ford brought this action to collect the balance remaining on a promissory note executed by appellants.[1] On appellee's motion, the District Court granted summary judgment. Finding no issue of material fact, we affirm.

Appellants (Ledbetters) executed a promissory note to secure a loan from Ford Motor Credit Company for the purchase of an asphalt plant. The terms of the note specified that appellants should make a payment of $6,917.78 each month. On November 30, 1976, the Ledbetters sent their monthly payment, accompanied by a letter notifying Ford that they would have to begin a "six-months moratorium on principal and interest" and requesting an abatement of all penalties.

Ford responded by letter on December 7, 1976, saying that it was not at that time in a position to accept a total moratorium without penalties.[2] Three and a half months later, after the Ledbetters had failed to send three monthly payments, Ford declared that it was accelerating the note and demanded payment. When appellants did not respond to the acceleration demand,[3] Ford filed this suit. Appellants answered the complaint by alleging that

> [w]e are interested in working with you; however, we would like to know that positive action is being taken with reference to the above items *before we commit* to any reduction in payments. (Emphasis added.)

---

1. Plaintiff also demanded attorneys fees, late charges, and interest.

2. Ford explained that *before it could agree*, it would need to know (1) what action defendants were taking to bring the plant up to operating status, (2) what plans were being implemented for a continued maintenance program, and (3) whether the Ledbetters would lower their asking price for resale of the plant to insure their acquiring proceeds to cover the mortgage. The final sentence of Ford's letter stated that

3. Instead of responding to the acceleration letter, the Ledbetters waited until what would have been the end of the moratorium, June of 1977, and sent their next monthly payment. Although Ford refused to accept the tender of payment, appellants continued sending payments due under the note.

they were not in default because Ford had agreed to a moratorium.

Ford then filed its motion for summary judgment, supported by an affidavit by its District Credit Officer.[4] Appellants filed their opposition along with three supporting affidavits.[5] Before the District Judge ruled on summary judgment, the Ledbetters filed a motion to amend their answer to include an additional defense—that of mutual departure from the original terms of the contract.[6] The District Court granted summary judgment, finding (1) that the language of Ford's letter had not communicated agreement, and (2) that the mutual departure statute, Ga.Code Ann. § 20–116, was of no relevance to this case.

█ On appeal, appellants argue first that the District Judge failed to rule on their motion to amend. Because the Judge thus necessarily granted summary judgment based on only limited facts, they maintain, this failure constituted reversible error. We cannot agree. Although the District Judge did not specifically state that the motion was granted or denied, it is clear that he received it, considered the asserted defense, and found it lacking.[7]

The Ledbetters next argue that the District Court, in holding that Ford had not agreed to a moratorium, ignored events subsequent to the exchange of the letters that clearly demonstrated mutual departure. They claim that in reliance on what they perceived to be the "conditions" imposed on Ford's agreement, they (1) negotiated in good faith with Ford regarding penalties to be assessed during the moratorium, (2) expended large sums of money in refurbishing the plant and in implementing measures to insure its proper maintenance, and (3) incurred great expense in attempting to sell the plant at a lowered price (as suggested by Ford).

Moreover, according to the Ledbetters, they notified Ford of all action taken, and at no time did Ford indicate that these gestures were not sufficient substitute for regular payment. These facts, they maintain, at least raise an issue regarding whether Ford departed from the letter of the contract.

In support of their position, the Ledbetters reassert the applicability of Ga.Code Ann. § 20–116 and cite several cases that state that the question of mutual departure should be submitted to a jury.[8]

---

4. The Officer swore that the Ledbetters had defaulted on the note and that they owed the amount sued for.

5. Both of the appellants filed affidavits swearing that their representative, Glenn Singleton, was duly authorized to negotiate the moratorium in question, and that they understood Ford's letter of December 7, 1976, to communicate agreement. Mr. Singleton's affidavit stated (1) that he had sent a letter to Ford requesting the moratorium, (2) that he had received a letter from Ford that he understood to agree to the moratorium subject to certain conditions, (3) that the Ledbetters had acted to satisfy the "conditions" that Ford had imposed on its acceptance, (4) that at no time did Ford inform appellants of its intention to rely on the exact terms of the contract, and (5) that the appellants had resumed their monthly payments and stood ready to fulfill their obligation under the contract.

6. Appellants relied on Ga.Code Ann. § 20–116 to support this defense:
   **20–116 Mutual temporary disregard of contract**
   Where parties, in the course of the execution of a contract, depart from its terms and

pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given the other of intention to rely on the exact terms of the agreement. Until such notice, the departure is a quasi new agreement.

7. As the District Judge observed in his order:
   [d]efendants attempt to rely on Ga.Code Ann. § 20–116 as authority for [the contract's] modification. That section is without relevance here, however, because there has been neither the payment or receipt of money and no mutual modification has been demonstrated.

8. *E. g., Abercrombie v. Howard, Weil, Labouisse, Fredericks, Inc.,* 136 Ga.App. 79, 85, 220 S.E.2d 275, 279 (1975); *Mauldin v. Gaimey,* 15 Ga.App. 353, 357–58, 83 S.E. 276, 278 (1914); *State Mutual Ins. Co. v. Strickland,* 218 Ga. 94, 126 S.E.2d 683 (1962); *Powell v. Mars Oil Co.,* 214 Ga. 710, 711, 107 S.E.2d 208 (1959); *Prothro v. Walker,* 202 Ga. 71, 73, 42 S.E.2d 114, 115 (1947); *Haynie v. Murray,* 74 Ga.App. 253, 255, 39 S.E.2d 567, 569 (1946); *Craig v. Craig,* 53 Ga.App. 632, 635, 186 S.E. 755, 758 (1936).

■ While we do not dispute that proposition, we do point out that, as when faced with a jury submission question, a trial judge has to, and may, make a determination that no reasonable jury could be in disagreement. The District Judge reached just that conclusion in this case when he found that appellants' action indisputably fell outside the meaning of § 20–116. Since there had been no payment or receipt of money[9] and no other indication that Ford intended to allow a moratorium,[10] appellants could not go to the jury with their claim. As we find no issue of material fact and no mistake of law, we affirm.

AFFIRMED.

---

9. Although the Ledbetters have *attempted* to "pay . . . money under such departure" by continuing to send monthly payments, Ford has consistently rejected these tenders. Moreover, the payments did not even begin until after Ford had filed its suit to foreclose. See *Morrison v. Roberts*, 195 Ga. 45, 46, 23 S.E.2d 164 (1942).

10. Under Georgia law, the parties to a contract must mutually consent to both its terms and to any subsequent change in those terms. *Speigel v. Hays*, 103 Ga.App. 293, 119 S.E.2d 123 (1961). Although Ford did indicate a willingness to negotiate on the subject, its letter made clear that it was not at that time agreeing to a moratorium.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.